THE STATE EX REL. HICKS, Attorney General, and others, Appellants, vs. STEVENS and others, Respondents.

*October 21 — November 29, 1901.*

*Constitutional law: Construction of statutes: Creating new county: Assembly districts: Location of county seat.*

1. If there is a reasonable construction of a statute which will uphold it and at the same time preserve the constitution from infraction, the court is bound to adopt it.

2. Sec. 4, art. IV, Const. (providing that "assembly districts shall be bounded by county, precinct, town or ward lines"), is not violated by an act creating a new county out of a portion of the territory of one of the assembly districts in an old county, but providing that it shall form a part of the original district until otherwise apportioned according to law. For the purpose of electing an assemblyman the new county, in such a case, may be treated as nonexisting.

3. In an act creating a new county a provision locating the county seat at a particular place, even though void, does not affect the remainder of the act, but the authorities of the county may locate the county seat under the general statutes.

APPEAL from an order of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

By ch. 469, Laws of 1901, the legislature created the county of Gates. The territory included in the new county constituted the northern part of Chippewa county. By the apportionment act (ch. 164, Laws of 1901), Chippewa county was divided into two assembly districts. The new county includes the north part of the Second assembly district. Sec. 11, ch. 469, is as follows:

"The said county of Gates shall be, and shall constitute a part of the Twenty-Fourth senatorial district, and shall also be attached to, and shall form a part of the Second assembly district of Chippewa county and shall also be attached to, and form a part of the Eleventh congressional district, until the same shall be otherwise apportioned according to law."

The act also provided that the county should consist of seven towns, and that within twenty days after its passage and publication the board of supervisors of the county should, meet and transact all business necessary to perfect and complete the organization of the county.

This proceeding is *quo warranto* to test the validity of the act creating said county. It is directed against the defendants, who are alleged to be chairmen of the different towns in the detached territory, and who are attempting to perfect and complete the organization of the new county as directed in the organic act. The chief ground relied on is that the act violates sec. 4, art. IV, of the state constitution, in that the Second district of Chippewa county is not bounded by county lines. The relators, by proper allegation, set out the facts relied on, and called upon plaintiffs to answer by what warrant they claim to hold and exercise the privileges of members of the county board of supervisors of said Gates county. The proceeding is by the state on the relation of the attorney general, with whom is joined a number of private relators who have property interests and are taxpayers in the new county. The defendants demurred on the ground of want of legal capacity to sue, and because sufficient facts were not stated to constitute a cause of action. The demurrer was sustained, and this appeal is from the order so entered.

For the appellants there was a brief by the *Attorney General* and *Sanborn, Luse & Powell* and *T. J. Connor*, of counsel, and oral argument by *L. K. Luse* and *A. L. Sanborn*.

For the respondents there was a brief signed by *John Barnes* and *L. E. McGill*, attorneys, and a separate brief by *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and oral argument by *John Barnes* and *C. F. Fawsett*.

BARDEEN, J. The decisions in the cases of *State ex rel. Att'y Gen. v. Cunningham*, 81 Wis. 440, and *State ex rel.*

*Lamb v. Cunningham*, 83 Wis. 148, settled the question that the legislature had no power to break up county lines and boundaries in apportioning assembly districts; that the provisions of sec. 4, art. IV, of the constitution, that assembly districts should "be bounded by county, precinct, town or ward lines," was mandatory; and that any apportionment act in violation thereof was void. No doubt has been thrown upon the correctness of those decisions. Counsel for the defendants have argued at considerable length that under *Slauson v. Racine*, 13 Wis. 398, we should hold that the provisions of the constitution are only applicable when the legislature is making a general apportionment act. Without attempting to combat or overrule the exact point decided in that case, we do not think this contention can be sustained, as applied to this case. The cases are nowhere near parallel in facts, and we have no disposition to stretch the rules there laid down to weaken the fundamental law. If this act can be sustained, it must be upon other and different grounds.

Although no express power to organize new counties is given by the constitution, the existence of that power cannot now be questioned. It was assumed to exist in the *Slauson Case*, and has been exercised by the legislature for more than fifty years as a part of its legislative power. The discussion in *State ex rel. Graef v. Forest Co.* 74 Wis. 610, sets at rest any possible question that can be raised as to its existence. Of course, the exercise of that power must be under the restrictions and limitations otherwise contained in the constitution. Its importance to the state renders it necessary to go as far as can be gone, within reason, to harmonize legislative action with constitutional provisions. The rule of all courts is that a statute will be declared unconstitutional only when it is shown beyond reasonable doubt that it conflicts with the fundamental law. It is equally true that the courts will seek every reasonable mode of recon-

ciliation of the statute with the constitution, and it is only
when reconciliation has been found impossible that it will
be declared void.    The exercise of constitutional powers
and the carrying of them into effect by legislative enact-
ment not infrequently results in apparent conflict.    The
present case is a striking example.   On the one side is the
constitutional mandate that members of assembly shall be
chosen from districts to be bounded by county lines.   On
the other is the power and apparent necessity for the
creation of a new county.   In the exercise of the power and
in obedience to that necessity, the legislature erects a new
county from an existing assembly district, covering but a
portion of its territory.   It says, in effect, the detached ter-
ritory shall remain a part of the old district for legislative
purposes until a new apportionment is made.   Leaving out
of sight for the moment the legal effect of this latter pro-
vision, we then have an assembly district that on its face
is not bounded by county lines.   This is said to be a plain
and palpable violation of sec. 4, and renders the new county
act void.   The power of the legislature to erect new coun-
ties is said to have run counter to the constitutional declara-
tion, and the former must yield to the latter.   But is this
necessarily so?   Is there no ground upon which this appar-
ent hostility can be reconciled?   If there is, it is the plain
duty of the court to seek it.   If the act may exist without
violating the spirit or essence of the constitution, the court
should not be eager to declare it void.   On the contrary, it
should reconcile the hostility if it can be done in reason,
giving the law the benefit of all reasonable doubts.   In seek-
ing a construction, the court may not consider or rest it
upon the necessity or want of necessity for the erection of
a new county.   The legislature is the sole judge of that
question.   The court is bound to adopt such construction, if
possible, as will uphold the legislative act, and at the same
time preserve the constitution from infraction.

This leads us to a careful examination and analysis of those features of the law which are said to make it unconstitutional.   No objection is made that it does not provide for the complete institution and organization of a county, and for the assumption and full exercise of duties by its officers as county officers.   The particular feature of the law considered bad, as already noted, is the making of the county a part of the second district of Chippewa county.   It is virtually conceded that the legislature had the power to make the new county, if in so doing it had readjusted districts so that they did not contravene sec. 4.   It will be observed 'by comparison of sec. 11 of the county act with the apportionment law (ch. 164) that no change has been made in the assembly district as originally erected.   Such district, so far as the voters who may take part in the election are concerned, remains precisely as it was before.   The legal effect of sec. 11 is to leave the apportionment entirely unchanged. The question then arises whether it is competent for the legislature, in the exercise of its power to create new counties, to give the new county life and vigor as to all county functions, and still permit the territory of the new county to remain, for legislative purposes, a part of the original district.   That this is the legal effect of sec. 11 is very clear. If it had said in express language that for purposes of electing senator, assemblyman, and congressman, the district set off should remain a part of the several districts to which it originally belonged, until another apportionment was made, the legislative intent would not have been clearer. The language used being capable of that construction, and such being the obvious purpose of the legislature, it should be adopted, and the act upheld, unless there is some grave objection against it.

We are not without precedents of helpful value in solving this question.   In times past, quite a number of the counties of this state were created and attached to some adjoin-

ing county for judicial purposes. Lincoln county was made from a part of Marathon county, and the act provided that when organized it should "constitute a separate county, except that the same shall be and remain attached to the county of Marathon for all judicial purposes under the law of this state." It did not provide for the election of a district attorney, sheriff, or clerk of the court. The validity of this legislation was most vigorously assailed in *Cathcart v. Comstock*, 56 Wis. 590, and the court said:

" We apprehend there is no constitutional objection to the two counties remaining united for judicial purposes, notwithstanding the organization of the new county for other purposes. Such acts have often been passed, and we are not aware that they have ever been questioned."

While not directly in point on the question involved, it establishes the proposition that a county may be lawfully created with some of its attributes yet to be given it.

In Michigan an apportionment having been duly made, the division into representative districts must remain unaltered until the return of another enumeration. By an act of the legislature the cities of Saginaw and East Saginaw were consolidated. Saginaw city and two townships comprised one district, and the city of East Saginaw the other. The act of consolidation provided that the two representative districts should remain the same. This legislation was attacked as being contrary to the constitution, but the court held that, when the act of consolidation brought the two cities into one municipality, the express provision that it did not change the districts saved it from the taint of unconstitutionality. *Smith v. Saginaw*, 81 Mich. 123, following *Bay Co. v. Bullock*, 51 Mich. 544. See *Pistorius v. Stempel*, 81 Mich. 133. The court distinguished the situation from an earlier case (*People ex rel. Att'y Gen. v. Holihan*, 29 Mich. 116) on the ground that no provision was made in the legislation under consideration therein preserving the integrity of the

State ex rel. Hicks v. Stevens, 112 Wis. 170.

representative districts as they stood.   The discussion bears
with some directness here, and we quote the following from
the opinion:

"Nothing in the act is contrary to public policy, or oper-
ates as a denial or abridgment of any right guaranteed to
the citizen.   On the contrary, it appears from the answer,
which must be taken as true, that it was for the interest of
the inhabitants of the two cities that they be united under
one municipal government.   The power of the legislature to
consolidate two municipal corporations is not questioned.   In
a new and growing state, cases must often arise where it is
for the interest of the people that territory lying in different
representative districts should, for the purpose of local self-
government, be comprised in one municipality.   Yet, upon
the relator's interpretation of the constitution, this can only
be accomplished, if at all, as often as an enumeration is
made, and then only by the legislature, which provides for re-
districting.   That the framers of the fundamental law of the
state intended such a result is wholly improbable.   The con-
stitutional provisions are fully satisfied when the legislative
districts are preserved intact, and the territories united for
municipal purposes only, preserving to the electors the neces-
sary provisions for electing their representatives."

Massachusetts has a somewhat similar constitutional pro-
vision.   As early as 1833 the supreme court of that state, in
answer to a question propounded by the legislature, said:

"In answer to the second question, we are of opinion that
it is within the constitutional power of the legislature, when
incorporating a new town, consisting of territory set off from
another town, or from two or more towns, to provide by law
that the new town, or the inhabitants of that part of the
new town which was taken from the old town, shall be and
remain a component part of the town or towns to which
such territory originally belonged, for the purpose of elect-
ing the representatives to which said original towns were
entitled by the preceding census of polls, until a new decen-
nial census of polls shall be taken."   *Opinion of Justices,* 6
Cush. 575.

In 1873 the legislature sought to unite the cities of Bos-
ton and Charlestown.   The act provided that, until legally
changed, the territory comprised within the limits of the

latter city, for the purpose of electing members of the legislature and Congress, should remain and be the same as then constituted. An effort to overturn it was met by the assertion that it was within the power of the legislature to change the boundary line of towns and counties, provided they did not affect the representative or senatorial districts as established, and that the act in question, having preserved the existing districts, was not unconstitutional, even though the election machinery was placed in the hands of the officers of the city of which the territory in question was made a part. *Stone v. Charlestown*, 114 Mass. 214. In other words, notwithstanding the constitution provided that no changes should be made in representative districts, after an apportionment had been made, until a new enumeration of inhabitants, yet the legislature might change the boundaries of towns and counties at will, provided the original election districts were preserved in their former integrity until a new enumeration.

In *Kinne v. Syracuse*, 3 Keyes, 110, the court of appeals of New York held that the general power of the legislature to change the boundaries of municipalities was subject to the injunction of the constitution that assembly districts shall not be altered, and that, if it become desirable to make such changes, the act adopted for that purpose should be so framed as to take effect at the next reorganization of assembly districts, or in some other mode consistent with the constitution. Later, when a new constitution was adopted, a provision was inserted in the apportionment section that nothing therein should prevent at any time a division of counties or towns, or the erection of new ones. The provision that districts should remain unaltered was also included, and also one that no town should be divided in the formation of assembly districts. These apparently hostile provisions came up for consideration in *People ex rel. Henderson v. Westchester Co.* 147 N. Y. 1,— a proceeding to test

State ex rel. Hicks v. Stevens, 112 Wis. 170.

the validity of an act of the legislature annexing a portion of the county of Westchester to the county of New York. The act of annexation provided that the detached territory should constitute a part of the city and county of New York "in every respect and to the same extent as if it had originally been included therein." The difficulties of the situation are apparent. County, judicial, assembly district, and senate district lines were changed. Harmony was wrought out of the confusion by holding that for all purposes of election of senator, member of assembly, and of the state judiciary, the annexed territory should be considered as remaining a part of the original districts, the same as if the act of annexation had not been passed, and that the words above quoted were satisfied by construing them as referring to municipal burdens and municipal rights in which the annexed territory and its inhabitants were to share; the upshot of it all being that for municipal purposes the act of annexation was complete, while for purposes of election of state officers mentioned the original districts were to be considered unchanged.

Another case sustaining the principle that for municipal purposes territory may be considered part of one municipality, and for political elections a part of another, is *Wade v. Richmond*, 18 Grat. 583. In *Howard v. McDiarmid*, 26 Ark. 100, the constitution divided the state into senate and representative districts, and provided that no other apportionment should be made until after a later enumeration. The court held that this did not prevent the legislature from detaching territory from a county in one district and attaching it to a county in another.

*Comm'rs of Granville v. Ballard*, 69 N. C. 18, is meagerly reported, and the opinion is so scanty in discussion as not to be very convincing. Under their constitution, legislative districts must remain unaltered until after another census. Territory in one senatorial district was set off and attached

to a county in another, the act being silent as to a change in the districts. The act was sustained on the ground that the voters of the detached territory might still vote in the original district, although for all other purposes but voting they were inhabitants of the new one.

*Lanning v. Carpenter*, 20 N. Y. 447, is a seeming authority the other way; but a careful reading of the opinion will disclose the fact that it rests largely upon the peculiar provisions of the state constitution then in force, preventing changes in judicial districts. The act creating Schuyler county provided that the elections for choice of members of the legislature and justices of the supreme court should be conducted according to the existing arrangement of districts until after the next state census. It was immediately to be a separate county for all other purposes, and after the state census for all purposes whatever. But by a direct constitutional provision the former allotment of judicial districts was to remain in force and could not be changed. As we understand it, it was for this reason the act creating the new county was held void.

The cases cited sustain the proposition that, although the constitution provides that election districts shall remain unaltered, still territory may be lawfully taken from one district and attached to another, or new municipalities may be formed, provided that for political purposes the original district shall remain intact. In the *Cathcart Case*, 56 Wis. 590, Lincoln county had all the attributes of a fully organized county, except for judicial purposes. In this case Gates county is a fully organized county, except in the matter of the election of assemblyman. In that regard, conventions must be held, nominations made, votes cast, and returns sent in, the same as though it had no existence. There is nothing in the act of creation that contravenes public policy. No right guaranteed to any citizen is denied or abridged. If the position assumed by the relators is correct, then either the

legislature has no power to create a new county intermedi-
ate the apportionment years, or, if it creates one, it must re-
arrange the apportionment so as not to infract the constitu-
tion.  No doubt, one of the objects of the constitutional
provision was to prevent juggling with apportionments.  If
new counties may be created and the apportionment rear-
ranged and readjusted to suit legislative whims, the power
might be subject to abuse, and the real purpose of the re-
strictions defeated.  Under the construction we feel com-
pelled to adopt, the legislature may meet the growing
demands of the increase of population,— may create new
counties and endow them with life and vitality as to matters
of local administration,— provided the original legislative
districts are not disturbed.  In other words, it is no evasion
of the real spirit and purpose of the constitution to permit
new counties to be created, even though the designated
boundaries may cross the lines of an assembly district, pro-
vided that for the purpose of electing the assemblyman the
original district is preserved.  For those purposes the new
county may be treated as nonexisting.  The argument as to
destroying county representation would be of greater weight
if the unit of representation was limited to counties, but it
is not.  Two or more counties may be joined in one assembly
district, so that no right of the people as a county is in-
fringed because a new county line is drawn through an
assembly district between apportionment acts.  A county,
as such, has no representation in the assembly.  Its chief
value to its people is the right to arrange and handle local
affairs, largely independent of the rest of the state.  The
right to representation in the assembly rests rather . upon
residence in an assembly district than in any given county,
so that no right of the individual as a resident of a particu-
lar locality is in the least affected by the circumstance that
the south boundary line of Gates county divides the Second
district of Chippewa county.

A suggestion is thrown out at the close of appellant's brief that the act is void because it locates the county seat at a particular place. _It was not pressed on the oral argument, and is only barely referred to in the brief. It is enough to say that, even if it be considered that that portion of the act was void, it would not affect the result of the case. The authorities of the county might still locate the county seat under the general statutes. We therefore pass the point without decision.

*By the Court.*— The order is affirmed.

MARSHALL, J., took no part.