CHARLES WESTON, AUDITOR, V. ROBERT RYAN.

FILED NOVEMBER 5, 1903.   No. 13,314.

1. **Constitutional Law.** "Changes or modifications of existing statutes, as an incidental result of adopting a new law covering the whole subject to which it relates, are not forbidden by section 11, article III of the constitution." *De France v. Harmer,* 66 Neb. 14.

2. **General and Special Laws.** It is for the legislature to determine as to the applicability of a general law to a given emergency, and as to the consequent propriety or otherwise of a special law.

3. **Act Constitutional.** This court will not undertake to say as to the

act of February 23, 1887, under which the ballots as to the adoption of the amendment to section 4, article III of the state constitution, were counted, and the result declared, that a general law would have been applicable, and that the act in question was therefore unconstitutional.

4. **Legislative Acts.** Something more than mere irregularities and improprieties in declaring the result of an election should appear, to warrant this court in attempting to set aside the solemn acts of the legislative bodies and the executive of the state as to the fundamental law of the state, especially after such legislative and executive action has been acquiesced in for sixteen years.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*Frank N. Prout* and *Norris Brown*, for plaintiff in error.

*Robert Ryan, Charles O. Whedon* and *Hector M. Sinclair, contra.*

HASTINGS, C.

In this case, the plaintiff below filed in the district court for Lancaster county a petition for an injunction, alleging that the defendant is auditor of public accounts; that he is about to prepare and issue warrants to the members of the state legislature of 1903, for their pay during the last twenty days of the session, at $5 a day; that warrants had already been drawn for the rest of the session at that rate; that the constitutional amendment of 1886 was never adopted by a majority of the votes at the election of that year; and that the legislature of 1887, in a joint convention, canvassed the votes on that proposed amendment, and declared that it had been defeated; that such result was correct, and was final, and is still in full force. He also alleged that he was a resident and taxpayer of Lancaster county, Nebraska, and would be compelled to contribute toward the payment of these warrants, and had no legal remedy.

The defendant, Weston, answered: (1) That the petition showed no cause of action. (2) Admitting the plaintiff was a resident and taxpayer of Lancaster county,

Nebraska, and defendant the auditor of public accounts. (3) Admitting the issuance by defendant of warrants for forty days' pay to the legislature, at $5 a day, and that he had drawn, and was about to issue, vouchers for the other twenty days of the session of the legislature, at $5 a day. (4) Alleging that the constitution of the state of Nebraska provides for a sixty days' session of the legislature, and compensation of the members at the rate of $5 a day. (5) Denying each and every of the other allegations of fact.

The sole question of fact in these pleadings is, whether or not the constitution of the state of Nebraska provides for compensation of $5 a day to members of the legislature, that is, has the amendment of 1886 become an integral part of the constitution? For the purpose of trial, the parties agreed that, under the constitution of 1875, members of the legislature were to have $3 a day for a session of forty days; that, at the general election of November 2, 1886, there was duly submitted to the voters of the state an amendment, whereby each member of the legislature, thereafter, should have $5 a day, for a session of sixty days; that copies of abstracts of the votes from the several county clerks, filed in the office of the secretary of state, showed 65,712 votes for the amendment, and 22,236 against it, and a total vote of 138,511 in the state, at that election; it is further agreed that the legislature on January 15, 1887, in joint convention, canvassed these copies, and declared that the amendment had been lost, and adjourned; that on February 15, 1887, senate file 255, entitled, "An act to provide for a recount of the ballots cast for and against the legislative amendment on the 2d day of November, 1886, and to declare the result," was introduced in the senate; that it passed both houses of the legislature, was signed by the proper officers, and was approved by the governor; that two senators and three members of the house were appointed members of the board provided for by this act; that they reported to the governor that an inspection of the ballots and poll books, used at the election, showed 72,497 votes for the amendment, and 22,135 against

it, and of those not voting 27,778, and of those voting both ways 16,013; that the board also reported to each house of the legislature, recommending another joint convention for the purpose of opening and counting returns made to the secretary of state and the speaker; that a joint convention of the two houses was held, and, at this convention, the following resolution was adopted, namely:

"*Resolved,* That the action of the joint session of the legislature, whereby the proposed amendment was declared not carried, be rescinded, and that the record of the same be stricken from the journal."

That the speaker proceeded to canvass the vote, with the following result:

> For the legislative amendment...... 72,497
> Against the legislative amendment.. 22,135
> Those voting "no" ................ 27,778
> Those voting for and against........ 16,013
>
> Total voting for and against........138,423

That, from the report to the governor submitted to the joint convention, Blaine, Sioux and Loup counties were omitted, no returns having come in from those counties under the act of February 23, 1887; that Sioux county held no election, there being no return of such election in the secretary of state's office; that on March 2, 1887, the governor issued his proclamation, reciting the submission of the proposed amendment, the report of the committee declaring the amendment adopted by a majority of all the votes cast at the election, and that said amendment was, thenceforth, a part of the constitution of the state of Nebraska.

The district court, on examination of the stipulation and of the pleadings, concluded that the sole question for determination was as to the constitutionality of the act of February 23, 1887 (p. 69, ch. 2, laws of 1887). It found this act unconstitutional, because it was special legislation, and a general law would have been applicable. Constitution, sec. 15, art. III, last clause. A decree, per-

petually enjoining the auditor from issuing any warrant for this portion of the legislators' salaries, was entered. To reverse this decree, the auditor brings error. Section 15 of article III of the state constitution absolutely forbids special legislation as to certain subjects. Its last clause is as follows:

"In all other cases where a general law can be made applicable, no special law shall be enacted."

It is conceded that the act in question is special legislation, as, indeed, it could hardly be denied. It is claimed that a general law would have been applicable, and the act of February 23, 1887, is therefore unconstitutional. It is also claimed that the act in question is obnoxious to section 11, article III of the constitution:

"No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed."

It is claimed that, since the effect of the act of February 23, 1887, was to suspend, until the completion of the legislature's recount, the provisions of sections 34-43, chapter 26 of the Compiled Statutes, providing for the preservation and custody of votes and poll books, and no reference is made to this provision, and they are not repealed nor included in the act, therefore the act is unconstitutional.

As to this last contention, it seems sufficient to say that the act of February 23, 1887, makes no attempt to amend the other act. It simply supersedes those sections of it for a limited time. The provision of section 11, article III of the constitution, as to amended laws, is not considered to have any application to an act complete in itself, even though the latter does conflict with prior statutes. *Bryan v. Dakota County,* 53 Neb. 755; *State v. Moore,* 48 Neb. 870; *De France v. Harmer,* 66 Neb. 14.

Was the act of February 23, 1887, unconstitutional and void, because of its being special legislation, where a general law would have been applicable?

As to this question, the position taken by the defendant at the present time is, that the legislature is the sole judge

as to whether or not a general law would be applicable under a given situation; that the final clause in section 15, article III, is merely advisory, and that the legislature must determine how it could meet the emergency. A large number of cases are cited in support of this contention. The latest one to which attention is called is *Sanitary District of Chicago v. Ray,* 199 Ill. 63. This case applies the identical constitutional provision which is appealed to in the present case, and holds that it is addressed to the legislative branch of the government, alone, and the court can not review the question whether the act is void, as violating this provision. The Illinois case is in accordance with the uniform holding of that state since 1859 in the construction of this constitutional provision. *Johnson v. Joliet & C. R. Co.,* 23 Ill. 202; *Wilson v. Board of Trustees of Sanitary District of Chicago,* 133 Ill. 443; *Murray v. Sanitary District,* 136 Ill. 489. The cases indicating a similar holding in Arkansas, Colorado, California, Florida, Indiana, Kansas, Missouri, New York and North Dakota are gathered in 10 Cent. Dig., col. 1425. Contrary holdings are cited in an early case in Iowa (1859) and in *State v. Newark,* 40 N. J. Law, 71. In many cases where the question of applicability of a general law is held to be addressed to the legislature alone, it is on the ground of the impossibility of judicially controlling the legislative discretion in a matter expressly left to the legislature's determination. There seems no reason to depart, in this case, from the almost uniform holding that the question, as to whether or not a general law is applicable in a given instance, is for the legislature and is not a judicial one.

It remains to be said that, if we felt at liberty to pass upon this question, and were compelled to hold that the act of February 23, 1887, is unconstitutional and void, it would not, in our opinion, by any means, follow that the amendment is not a part of our state constitution. In the recent case of *Taylor v. Commonwealth,* 101 Va. 829, 44 S. E. 754, the supreme court of Virginia holds that their state constitution of 1902, having been acknowledged and ac-

cepted by the officers administering the state government and by the people and being in force without opposition, must be regarded as an existing constitution, irrespective of the question as to whether or not the convention which promulgated it had authority so to do, without submitting it to a vote of the people.

In *Brittle v. People,* 2 Neb. 198, is a similar holding as to certain provisions of the Nebraska constitution of 1866, which were added by the legislature at the requirement of congress, though never submitted to the people for their approval.

In the present case, it appears from the stipulation that the legislature examined the ballots and, on a count, found and declared, through the second joint convention, that enough of them had been cast in favor of the amendment to adopt it. The executive department of the state acted upon this declaration, and proclaimed it to be a part of the state constitution. The only requirement named in the constitution itself is that the amendment shall have been submitted in the manner prescribed, and shall have received a majority of all the votes cast at that election. The stipulation of the parties, in this case, contains a clause that this amendment was duly submitted, and another that the legislature, on a recount, declared that it had received the required number of votes. The same stipulation, it is true, says that there were "copies of abstracts" on file in the secretary of state's office showing that it had received some 3,500 less than a majority of the total votes. It would seem that the admitted fact of the presence of these abstracts, which there was no law for applying to the constitutional amendment, comes very far short of a showing that the ballots, certified to have been found by the legislature and this board, did not exist. It is true that the county clerk had, so far as appears, no interest in falsifying these copies of abstracts. It is true that the members of the legislature were acting on the question of their own time of service and the amount of their own compensation; but it seems to

us clear that the question of the adoption, and the consequent validity of this amendment, depends upon the number of votes it received, and that after sixteen years it is too much to ask us to set it aside, not on the ground of any actual lack of votes, but on the ground of irregularity, informality and impropriety in the manner in which the vote was counted and the result declared. We are inclined to the opinion that, if the act of February 23, 1887, was entirely void, the amendment would still remain a *de facto* portion of the constitution until it should be affirmatively shown that the alleged recount was false, and that the ballots declared by it did not exist, and that the amendment did not in fact receive a majority of all the votes cast at that election. No such showing was attempted by the plaintiff in this action, and it seems to us, as above remarked, that informalities and irregularities in declaring the result of an election should not be held to avoid an important portion of the framework of our state government which has been acquiesced in for sixteen years.

It is recommended that the judgment of the district court be reversed and the action dismissed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the action dismissed.

REVERSED.

The following syllabus and opinion were prepared by Commissioner AMES:

1. **Submission of Constitutional Amendment.** The submission by the legislature to the electors of a proposed constitutional amendment is not a legislative act. In making such a submission, the legislature act in a capacity strictly analogous to that of a constitutional convention and are subject to such constitutional restrictions and limitations, only, as have direct reference to the exercise of that power.

2. **Constitutional Law.** An act is not obnoxious to the constitutional inhibition against special legislation, if the subject with which it deals is special and particular in its nature.

3. **Amendment to Constitution: POWER OF LEGISLATURE.** When a pro-

posed constitutional amendment has been duly submitted to the people without prescribed regulations with reference to the manner of counting, canvassing or returning the ballots, or ascertaining or authenticating the result of the election, it is competent for the legislature to provide by special enactment for so doing.

AMES, C., concurring.

I desire to state, as briefly as possible, though unavoidably at considerable length, some of the reasons why, in my opinion, the injunction applied for in this action ought not to have been granted.

Counsel for the relator question the validity of the act of the legislature of February 23, 1887, entitled, "An act to recount the ballots cast for and against the legislative amendment on the 2d day of November, 1886, and to declare the result," for two reasons: First, that the act is special legislation, and in violation of section 15, article III, of the constitution; second, that it is amendatory of chapter 26, entitled "Elections," of the Compiled Statutes of 1885, and is in violation of section 11 of said article, because of failure to set forth and repeal the provisions amended.

Inasmuch as this chapter 26 confessedly does not treat, even inferentially, of the counting or canvassing of votes cast at elections on constitutional amendments, the latter objection does not seem to call for comment. If counsel are in earnest in urging the former objection, it is surprising that they did not direct their assault against a possible point of attack occurring earlier in the history of the transaction.

The measure adopted on the 5th day of March, 1885 (p. 435, ch. 124, laws of 1885), is without an enacting or a repealing clause, and bears the following title: "An act for a joint resolution to amend section 4, article III, of the constitution of the state of Nebraska." This title, so far from "clearly expressing" the subject treated of in the body of the document, makes no reference whatever to the submission of a proposed amendment to the electors, although by a proviso at the end thereof a form of ballot to

be used at such an election is prescribed. If the object of the constitutional requirement as to title is, as has been frequently held, to inform the public of the nature and subject matter of measures pending before the legislature, the title in question not only failed of that object but was positively misleading, because the citizens, being supposed to know the law, and to know that the legislature were without power to amend the constitution, as the title purported that they were about to attempt to do, may well have looked upon the whole procedure as a farce, and so have omitted, what they would otherwise have done, to oppose it before the legislative bodies and committees. Why then have not counsel assailed this measure, or at least that part of it prescribing the form of ballot, as being unconstitutional and void, and insisted not only that there was no lawful counting or canvassing of the ballots cast at the election of 1886, but that there were no lawful ballots on the subject, cast at such election, to be counted? Plainly and obviously because the act of submitting a proposed constitutional amendment to the electors, is not an act of legislation at all.

Section 1, article XV, of the constitution is as follows:

"Either branch of the legislature may propose amendments to this constitution, and if the same be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and published at least once each week in at least one newspaper in each county, where a newspaper is published, for three months immediately preceding the next election of senators and representatives, at which election the same shall be submitted to the electors for approval or rejection, and if a majority of the electors voting at such election, adopt such amendments, the same shall become a part of this constitution. When more than one amendment is submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately."

In my opinion, this provision is self-executory, and no

legislation or regulation is indispensably requisite to carrying it into effect. The legislature, in proposing an amend‑ ment to the constitution, acts in a capacity in strict analogy to that of a constitutional convention. When the proposed measure has received the concurrent consent of three fifths of the members elected to each branch of the legisla‑ ture, it is, *ipso facto,* submitted to the people for their ap‑ proval or rejection at the next general election. It can not be repealed or revoked at either the same or a subsequent session, and the electors can not be deprived of a right to vote upon it, either by a failure to prescribe a form of bal‑ lot or to regulate the counting, canvass or return of them, nor even by a neglect or refusal of the executive depart‑ ment to make the required publication of it. There are notable, in this connection, two maxims lying at the foundations of the American republics. One is, that they are governments simply and solely by law and not at all by men; and the other is, that the people are the sole source of legislative power and that, in those respects in which they have reserved the right of direct legislation, they supersede all other law‑making authorities whatsoever, and are not subject to any limitations or restraints of any de‑ scription not self‑imposed. These maxims have been the subject of much variously illuminating comment of late years, but I am unaware that they have been authorita‑ tively repealed or abrogated.

At the time this joint resolution was passed and at the time of the ensuing general election, there was no regula‑ tion providing a method of ascertaining the result of the vote. That it was equally competent for the legislature to embody such a regulation in the resolution, as it was to prescribe therein the form of the ballots, does not appear to me to be open to doubt, but their failure in this respect did not invalidate the election or deprive the will of the voters of its potency. When the legislature of 1887 met, there had been held a lawful election, but there was, and had been, no lawful method for ascertaining and authenticating its result. To supply this omission was the imperative

duty of the lawmakers; and that purpose was accomplished by the act assailed by the relator. Even if the adoption of this act is properly regarded as the exercise of legislative functions, still the measure is not open to the criticism of being a special act. It was as general as was the subject matter with which it dealt. Normal schools, hospitals, asylums and such like educational and eleemosynary institutions under state patronage and control, are not required to be authorized by legislation general in form, and it would be strange if a specific constitutional amendment could not be proposed or adopted except in obedience to prescribed regulations not found in the constitution itself and enacted by general law. It is urged as a *reductio ad absurdum* that if the act in question is valid, a board of canvassers might have been constituted of road-supervisors. The illustration is equally apt and unconvincing. A board might lawfully have been composed of such persons, or of deputy oil inspectors or game wardens, but we are not bound to presume that such a commission would have been less capable or trustworthy than that which was in fact created. It is enough to say that the composition of the board was a matter within the exclusive discretion of the legislature.

For the foregoing reasons, it is recommended that the judgment of the district court be reversed and the action dismissed.

OLDHAM, C., concurring.

In my judgment the question as to whether general legislation is applicable to a particular condition rests in the sound, rather than the arbitrary, discretion of the legislature. It seems to me, that the duty of canvassing and declaring the result of the election on the proposed constitutional amendment presented a question of procedure not at that time covered by general legislation, and created an emergency sufficient to authorize special legislation, if such were necessary, for the purpose of determining the will of the people, as expressed by the votes cast

at the election on the amendment.  I think, however, that entirely independent of the question of the regularity or irregularity of the manner in which the result of the election was ascertained, the constitution itself is self-executing, in declaring that the vote of a majority of those present and voting at the election should adopt a proposed amendment properly submitted by the legislature.  It is conceded that the amendment was properly submitted; that an election was held, and that votes were cast both for and against the proposed amendment.  The legislature, acting within the scope of its apparent authority, attempted to and did canvass the returns of this election and, presumably, after a recount of all the votes cast for and against the amendment, declared the amendment to have been adopted.  Proclamation of this result was made by the executive branch of the government.  The result was and has been acquiesced in by all departments of the state government for sixteen years before the institution of the instant case; consequently, I think, we would not be justified in overturning the annex to the framework of our state government attached by this constitutional amendment, short of clear and convincing proof that a majority of the voters voting at the election did not vote for the adoption of the amendment.