STATE EX REL. SMITH, Plaintiff, vs. ZIMMERMAN, Secretary of State, Defendant.

*February 5—March 2, 1954.*

308

309

310

311

312

For the plaintiff there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur J. Kaftan* and *Fred F. Kaftan*.

For the defendant there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane* and *Mr. Honeck*.

BROWN, J. The substance of the complaint is that sec. 3, art. IV, Wis. Const., permits only one districting and apportionment by the legislature in the period between federal enumerations, and such a one was accomplished by ch. 728, Laws of 1951, wherefore ch. 550, Laws of 1953, being a second redistricting and apportionment within the same census period, is unconstitutional legislation. The only facts pleaded as to variations between the 1951 and 1953 acts are those which concern Brown county and it is to the part of the chapter affecting that county alone that we direct this decision and opinion.

The part of the constitution involved here reads:

*"Apportionment.* Section 3. [As amended Nov. 1910] At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, soldiers, and officers of the United States army and navy." (Art. IV.)

It is now settled that, without a constitutional change permitting it, no more than one legislative apportionment may be made in the interval between two federal enumera-

tions. *State ex rel. Thomson v. Zimmerman* (1953), 264 Wis. 644, 661, 60 N. W. (2d) 416, 61 N. W. (2d) 300. We do not understand that defendant disputes this but he does submit that up to and including the time when ch. 550, Laws of 1953, was enacted there had been no completed, final apportionment, notwithstanding the passage of the Rosenberry Act in 1951; wherefore the 1953 legislature was free to proceed with modifications of the Rosenberry districts if it chose to do so, at least up to January 1, 1954, when the Rosenberry Act became operative as a result of the referendum.

The present defendant has been before us in two previous cases involving the validity of the Rosenberry Act and in both he conceded that it met constitutional requirements. *State ex rel. Broughton v. Zimmerman* (1952), 261 Wis. 398, 404, 52 N. W. (2d) 903, and *State ex rel. Thomson v. Zimmerman, supra* (p. 649). In discussing the legislature's attempt to change senate districts by ch. 242, Laws of 1953, we stated expressly that under the present state constitution the passage of the Rosenberry Act exercised and exhausted the power of the legislature to redistrict during the present interval between censuses except in the cases of districts whose boundaries did not observe the constitutional mandate. *State ex rel. Thomson v. Zimmerman, supra* (pp. 661, 663). There is no claim here that the Brown county apportionment in 1951 did not comply with all constitutional demands. Both houses of the legislature passed the bill, the governor signed it, the secretary of state published it, the legislature adjourned *sine die,* and the citizens of the state by their action in the referendum brought to pass the condition upon which the finality of the Rosenberry apportionment depended. Nothing in the facts now called to our attention disposes us to reverse our statement in the *Thomson Case, supra,* and to hold that the Rosenberry Act was *not* completed legislation. In the absence of a successful

attack upon its constitutionality (not attempted here), it was a reapportionment, directed by the constitution to be done once and only once following each federal census, which passed beyond the legislature's power of revision at the date of the referendum at the very latest. It is not necessary to decide now whether it so passed at an earlier date. The defendant's contention that the 1953 legislature retained and still possessed any power to redistrict areas already districted in conformity to the constitution by ch. 728, Laws of 1951, cannot be sustained.

Defendant submits another proposal in justification of the 1953 legislation, to wit, that even if the time had passed when the legislature could engage in further districting and apportionment as such, nevertheless the constitution tolerates changes in district boundaries if they are incidental to the exercise of other unquestioned legislative powers. This argument rests on *Slauson v. Racine* (1861), 13 Wis. *398, but defendant seeks to extend it far beyond the facts in that case to establish a principle which was neither presented nor declared there. In the *Slauson Case, supra, by action of the legislature,* certain farm area was taken from a township and annexed to the city. Before the annexation, the city lay in one assembly district and the farm in another. The owner of the land considered that when his property became a part of the city it would be transferred into the city assembly district and he sought to defeat the annexation by saying that the statute which accomplished it was a second apportionment in one census period and was therefore void. The supreme court agreed that when the legislature annexed the farm to the city the property became part of the city for all purposes and therefore became a part of the city assembly district. But the court held that such change of area from one legislative district to another, was not a reapportionment prohibited by sec. 3, art. IV, Const., but was only an incident

to the accomplishment of a valid act passed to effect a different, constitutionally authorized purpose. We said (p. *401):

". . . we still think the implied [constitutional] prohibition does not extend to such changes in these districts as may result incidentally from the exercise of the acknowledged power of the legislature to organize counties, towns, and cities, and change the boundaries of such as are already organized."

The attorney general relies on a sentence in the opinion (p. *402) stating:

"The restriction is upon the power to apportion and organize these districts by laws having that object alone. But it is subject to the power to organize and change the boundaries of the political divisions of the state."

And he points out that ch. 550, Laws of 1953, was not enacted solely to apportion and organize legislative districts but had for its object the recognition of the changes made in its wards by the city of Green Bay.

The *Slauson* language must be read in connection with the facts which the court was considering and with the rest of what is said in the opinion. It is noteworthy that the statute did not mention assembly districts nor attempt to set their boundaries. It was the court, not the legislature, which said that the boundary had changed as an incident to a valid act which annexed territory to the city. Obviously, no area was considered except that composing the addition to the city. We concluded this part of the *Slauson* opinion as follows (p. *403):

"We are therefore of the opinion that it is competent for the legislature to change incidentally the boundaries of assembly districts, in exercising its power to change the limits of cities, towns, etc.; and that if a part of a town in one district is annexed to a city which constitutes another, unless there be some exception or reservation in the law

itself, it becomes a part of such city for all purposes for which the legislature could annex it. So that the previous law constituting that city an assembly district would apply to everything that became absolutely a part of it, just as an incumbrance upon land attaches to subsequent improvements upon it, which become a part of the realty. It follows that we should not hold the law unconstitutional on account of the first objection."

Thus, when the court reached the decisive portion of this section of the opinion its language shows clearly what it meant by changes in legislative-district boundaries incidental to other legislation,—namely, those alterations which are confined in their effects to the territory whose municipal affiliation is changed and which necessarily accompany that change, as an incumbrance attaches to improvements made on the incumbered land. That opinion does not require, nor do we think it warrants, extension beyond the facts of the *Slauson Case, supra,* such as defendant urges, to authorize the shifting of other boundaries in no way involved in the municipal change to which it is alleged in argument to be incidental.

We recognize now, as we have so often in the past, that legislation is presumed to be constitutional unless clearly established otherwise and the court must endeavor to sustain the legislation rather than to invalidate it. "The court is bound to adopt such construction, if possible, as will uphold the legislative act, and at the same time preserve the constitution from infraction." *State ex rel. Hicks v. Stevens* (1901), 112 Wis. 170, 173, 88 N. W. 48; *State ex rel. Thomson v. Zimmerman, supra* (p. 648). If the *Slauson Case, supra,* does not *require* us to sustain the present act, and we have just said it does not, may we sustain it nevertheless, by accepting the defendant's invitation to extend the conception of "incidental changes" in assembly-district boundaries to include territory which lies distant from the

area whose municipal status has been changed and which the municipal change did not affect?

We observe at the outset that in the present case the legislature had no part in changing the ward boundaries. It was the city council which did that and it is *that* change to which defendant must claim the alterations in assembly-district boundaries are incidental. This, in itself, is a far cry from a change incidental to some other valid act of the legislature. But even if the primary change was by act of the legislature and the change affected external boundaries of the municipality instead of internal ones, as in the *Slauson Case, supra,* our obligation to the constitution, which is superior to our obligation to an act of the legislature, would require us to declare unconstitutional that which was done here. The incidental effect on assembly districts of a legislative change in municipal boundaries of the *Slauson* type must be confined to the area dealt with in that part of the legislation to which the change in district boundaries is claimed to be incidental. When it extends further the constitutional prohibition on frequent redistricting is nullified, for then by making some minor municipal change the legislature would be empowered to redistrict to an extent limited only by its discretion. In the instant matter the alleged incidents ran all over Brown county altering three assembly districts. The defendant tells us that these were desirable,—not necessary, even, but desirable,—population compensations incidental to the revisions of a few ward boundaries by the city council of Green Bay. It is a small tail to wag so large a dog. There is no logical or legal reason, if so much is possible, why the incidental effects need stop at the county line; nor why the senate districts, which commonly embrace several counties, should not come in for like "incidental" modification. Annexation and ward revision in cities and villages is a continuous process. If we hold that the legislature, upon observing that such a change has taken place, may make that the starting point

for a reconsideration and re-creation of legislative districts to a degree not even limited by the boundaries of the property annexed or otherwise dealt 'with, for all practical purposes the legislature may redistrict the state as often as it chooses, the constitutional prohibition to the contrary notwithstanding.

In *State ex rel. Hicks v. Stevens, supra,* the *Slauson Case* was cited to this court by parties wishing to sustain an act of the legislature. We said, page 172, that the facts in the two cases were not parallel and we had no disposition to stretch the rules laid down in the *Slauson Case* to weaken the fundamental law. So, here! And on page 180 of the *Hicks Case,* in reference to the legislature's power to apportion and the constitution's provision that it may apportion only once in a given period, we used language that is appropriate and controlling now:

"No doubt, one of the objects of the constitutional provision was to prevent juggling with apportionments. If new counties may be created and the apportionment rearranged and readjusted to suit legislative whims, the power might be subject to abuse, and the real purpose of the restrictions defeated. Under the construction we feel compelled to adopt, the legislature may meet the growing demands of the increase of population,—may create new counties and endow them with life and vitality as to matters of local administration,—*provided the original legislative districts are not disturbed.* In other words, it is no evasion of the real spirit and purpose of the constitution to permit new counties to be created, even though the designated boundaries may cross the lines of an assembly district, provided that for the purpose of electing the assemblyman the original district is preserved." (Emphasis supplied.)

The court in the *Hicks Case* declined to overrule the *Slauson Case* on the exact point which *Slauson* decided, but the opinion makes it clear that the court realized the conflict between sec. 3, art. IV, Const., and the philosophy of the

*Slauson* decision as interpreted by the present defendant, and it refused to concede that even the creation of a county by the legislature could incidentally change the existing assembly districts.

We conclude that ch. 550, Laws of 1953, in its Brown county application, is an apportionment of the county's assembly districts for the second time since the United States census of 1950, and is void as a violation of sec. 3, art. IV of the state constitution.

*By the Court.*—Defendant's demurrer to the complaint overruled. Judgment granted to plaintiff declaring that ch. 550, Laws of 1953, is unconstitutional and void in its application to Brown county and the call for elections of Brown county assemblymen shall conform to ch. 728, Laws of 1951, until changed according to law.