REQUESTED BY: Senator Merton L. Dierks
In connection with your introduction of LB 1257, you have requested an Attorney General's Opinion addressing the ability of the Legislature, under Article III, section 5, of the Nebraska Constitution, to engage in legislative redistricting more often than once after each federal decennial census, in the absence of a court order.
Thirty-five Years of Confusion. The "Dangers" of Obiter Dictum
Your request presents an unusually interesting question of state constitutional law. The trail leading to its answer is so exceptional that before we can even begin to address the issue presented we must first attempt to untangle a thirty-five year-old legal puzzle.
In 1961 the Nebraska Legislature adopted a bill proposing a constitutional amendment pertaining to legislative redistricting. 1961 Neb. Laws LB 217. This proposal was submitted to the voters of Nebraska at the 1962 election. See Carpenter v. State, 179 Neb. 628, 630,139 N.W.2d 541 (1966). As approved by the voters in 1962, Article III, section 5, of the Nebraska Constitution then provided, in pertinent part, "The Legislature may redistrict the state from time to time, not more often than once in ten years." Id.
However, in 1964, a federal court declared portions of the 1962 amendment unconstitutional. League of Nebraska Municipalities v. Marsh,232 F. Supp. 411 (D.Neb. 1964). See also League of Nebraska Municipalities v. Marsh, 242 F. Supp. 357 (D.Neb. 1965), appeal dismissed, Marsh v. Dworak, 382 U.S. 1021 (1965). Thus, the redistricting performed by the Nebraska Legislature under the 1962 amendment was invalidated. See Carpenter v. State, 179 Neb. at 631. The Legislature started over in 1965 (five years after the decennial census). Id. In addition to redistricting, the Legislature passed LB 923 (1965 Neb. Laws). This bill once again submitted a proposed revision of Article III, section 5 to the voters. As approved by the voters in 1966, the new constitutional provision deleted the "not more than once in ten years" language, and replaced it with "The Legislature shall redistrict the state after each federal decennial census." Neb. Const. art. III, §5.
Thus, having just completed multiple attempts at legislative redistricting subsequent to the 1960 census, the Legislature proposed, and the voters approved, removing the language in the Constitution specifically limiting redistricting to "not more often than once in ten years." However, a year after the new constitutional provision was adopted, a federal court released an opinion in which it stated, "Congressional redistricting differs from legislative redistricting in one important aspect that should be mentioned here. Under Section 5 of Article III of the Nebraska Constitution, the Legislature may redistrict itself not more often than once in ten years. There is no such limitation on Congressional redistricting." Exon v. Tiemann, 279 F. Supp. 603, 608
(D.Neb. 1967) (emphasis added).
The court in Exon was considering the constitutionality of new Congressional districts enacted in 1961. Id. at 605. The court's comments concerning state legislative redistricting were purely dicta and have no legal force.[1] More importantly, though, the court in Exon was clearly quoting from the wrong (old) constitution. Id. at 608. Compare Neb. Const. art. III, § 5. This mistake has apparently caused confusion regarding this issue for the last 35 years.
Compounding the error of the federal court, and adding to the confusion created thereby, the published opinion of the court was supplemented with an editor's headnote (undoubtedly relied upon by subsequent researchers) which repeated the faulty dicta as a proposition of law: "Congressional redistricting differs from legislative redistricting . . . in that under [the] Nebraska Constitution the Legislature may redistrict itself not more than once in ten years, while there is no such limitation or congressional redistricting." Exon,279 F. Supp. at 605 (headnote 6).
In 1971, an Attorney General's Opinion was issued to a state senator on several reapportionment questions. One question was whether the Legislature could redistrict more often than every ten years. In response, the Opinion cited Exon v. Tiemann, 279 F. Supp. 603 (D.Neb. 1967) to support the proposition that redistricting could not occur more than once in ten years. Oddly, the opinion set forth the text of the current constitution, but stated, "This matter is controlled by Article III, section 5, which specifically provides for redistricting no earlier than every ten years." 1971-72 Report of the Attorney General 29, 30 (Feb. 11, 1971) (emphasis added). This statement was correct as to the Constitution in effect prior to 1966, but not with regard to the Constitution as it existed at the time of the Opinion. Even if one were to interpret the new language as permitting redistricting only once in ten years, one could not say the Constitution "specifically" provides for this result. The "specific" language to which the Exon case referred was deleted by the voters in 1966.
The Exon dicta once again led to confusion in Op. Att'y Gen. No. 92090 (Aug. 3, 1992). In addressing the issue of whether court ordered redistricting could involve a statewide redistricting plan (as opposed to merely redrawing the specific districts involved in the litigation) the Opinion cited to both Exon v. Tiemann, and the 1971 Attorney General's Opinion for the proposition that "Article III, section 5 of the Nebraska Constitution does not allow the Legislature to redistrict itself more often than once in every ten years." Op. Att'y Gen. No. 92098 at 2. This statement was itself dicta, as the issue of redistricting frequency was not at issue in the Opinion. Furthermore, the statement was simply a reiteration of the same proposition from the 1971 Opinion and the 1967 Exon decision.
In sum, the question of whether the Nebraska Legislature may redraw legislative districts more often than once in ten years has been confused for 35 years by a series of mistakes, dicta and recitation of prior mistakes and dicta. Thus, the answer to your question must be determined from a fresh examination of the language of the Constitution as it now exists, using the rules of constitutional interpretation.
Rules of Constitutional Construction
In order to determine whether legislative redistricting may be done more often than once in ten years in Nebraska it is necessary to examine the relevant language of the Constitution in light of the rules established by the Nebraska Supreme Court for construing constitutional provisions. First, we are bound by the cardinal rule that the State Constitution must be applied and enforced as it is written. State ex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991). Next, the provisions of the Constitution must be read as a whole. Jaksha v. State,222 Neb. 690, 385 N.W.2d 922 (1986). Constitutional provisions are not open to construction as a matter of course. In re Applications A-16027,242 Neb. 315, 328, 495 N.W.2d 23 (1993), modified, 243 Neb. 419,499 N.W.2d 548 (1993). Construction of a constitutional clause is appropriate only when it has been demonstrated that its meaning is not clear and that construction is necessary. Id. If a provision must be construed because its meaning is not clear, then "its words are to be interpreted in their most natural and obvious sense, although they should receive a more liberal construction than statutes. Spire,238 Neb. at 775, 472 N.W.2d at 409.
When a constitutional provision is ambiguous, it is also appropriate to search for intent. "Effect must be given to the intent of the framers of the organic law and of the people adopting it. This is the polestar in the construction of constitutions." In re Application A-16027 et al.,242 Neb. at 329. Id. at 3. The Nebraska Supreme Court has often examined the records of constitutional conventions to help determine intent. When an amendment is proposed by the legislature, rather than by a constitutional convention, evidence of intent may be gathered from the legislative history. As the Nebraska Supreme Court held ninety-nine years ago, "The legislature, in proposing an amendment to the constitution, acts in a capacity in strict analogy to that of a constitutional convention." Weston v. Ryan, 70 Neb. 211, 221, 97 N.W. 347 (1903). Id.
Finally, because the Nebraska Constitution "is not a grant but, rather, a restriction on legislative power, . . . the Legislature is free to act on any subject not inhibited by the Constitution." State ex rel. Stenberg v. Douglas Racing Corp., 246 Neb. 901, 905, 524 N.W.2d 61, 64
(1994). As the Nebraska Supreme Court has repeatedly held, "The Legislature has plenary legislative authority except as limited by the state and federal Constitutions." State ex rel. Stenberg v. Moore,249 Neb. 589, 595, 544 N.W.2d 344 (1996).
Analysis of Article III, Section 5
Applying the foregoing rules of constitutional interpretation, we first look to the language of the constitution to determine whether the provision is clear on its face, or whether an ambiguity exists which requires construction.
Article III, section 5 currently provides, in pertinent part, "The Legislature shall by law determine the number of members to be elected and divide the state into legislative districts. . . . The Legislature shall redistrict the state after each federal decennial census. . . ." Neb. Const. art. III, § 5. The first quoted provision places broad power in the Legislature to apportion the State, and contains no limitations as to frequency of its action. The second quoted provision, on its face, mandates redistricting "after each federal decennial census." This provision clearly places a floor or minimum requirement on legislative action. It does not, by its express terms, establish a ceiling or maximum limit on legislative action. The question, then, is whether the provision read as a whole (including the reference to the decennial census) was intended to limit the Legislature's power to redistrict to only once after each census. It could be argued that since the population numbers used in redistricting "shall be the population . . . as shown by the next preceding federal census," id., it would not make sense to redistrict more than once in ten years. However, this argument fails to account for the possibility of legislative boundaries being reconfigured for reasons other than population changes.
We find the words of section 5 to be ambiguous with respect to the issue presented. Therefore, we look to the historical background of the provision and any legislative floor debate on the language as it now exists.
The legislative history of 1965 Neb. Laws LB 923 contains some discussion pertinent to the issue at hand. As originally introduced, the bill provided that the Legislature may redistrict the state after each federal decennial census. Committee Records on LB 923 (Neb. 1965) p. 5. However, some legislators felt that, in light of recent federal court decisions requiring redistricting to be done based on population (one person — one vote), it was important that redistricting be mandatory after each census, rather than optional, in order to avoid future litigation. Id.
The pertinent committee debate centered on having redistricting at least once in ten years (a minimum standard). Id. at 11-12. Nonetheless, a proposed amendment to change "may" redistrict to "shall" redistrict was defeated in committee. Committee Records on LB 923 (July 22, 1965) (Executive Session minutes).
The floor debate on LB 923 also contains some pertinent discussion. Perhaps most relevant was an amendment proposed by Senator Bauer: "What my amendment does is . . . it provides that redistricting may be done once after each federal census. . . ." Floor Debate on LB 923 at 2913A. (emphasis added). According to Senator Bauer, "We have been talking about five things altogether that we have been dealing with in the Constitution. One is this matter of how often you redistrict." Id. In response, Senator Warner stated, "I believe, Senator Bauer, we have already adopted all of the provisions of your resolution with one exception and that is the word `once', that the legislature may redistrict once following the federal census. . . . but as I see your amendment, there is not any change from where we now . . . stand with the exception of adding the word once." Id. at 2913A — 2914A. After limited debate, Senator Bauer withdrew his amendment. Id. at 2914A.
Later, Senator Knight proposed changing the word "may" redistrict to "shall" redistrict. Id. at 2921A. Again, as in committee, the debate seemed to be centered on whether it should be mandatory to do a redistricting after each census or whether the Legislature should have the option of doing it less often. Id. at 2921A — 2922A. The procedural history of this proposal is somewhat cloudy due to an intervening motion to indefinitely postpone the bill. However, the final proposed amendment did contain the word "shall" rather than "may" with regard to redistricting after each federal decennial census. See Floor Debate on LB 923, Aug. 3, 1965 at 2985 (Sen. Warner discussing his select file amendment, including the replacement of "may" with "shall").
It is also noteworthy that in discussing his opposition to a motion to indefinitely postpone the bill, Senator Warner listed several changes that, in his view, had to be made to the Constitution. One was a provision for staggered terms; one was a change to county line requirements; and "I think that you are going to have to have the constitutional change so that you can strike the language about you may redistrict a state from time to time and not more oftener than every ten years. . . ." Id at 2923A. His reasoning was "you are going to have to reapportion every federal census or else you will be in another problem in 1971 session following the census at that time." Id.
As a whole, the history of the current constitutional provision argues against reading a frequency limitation on legislative redistricting authority into the Constitution. As discussed above, in 1965 the Legislature adopted a bill proposing to remove an express constitutional limitation on frequency of redistricting ("The Legislature may redistrict . . . not more often than once in ten years."). See 1965 Neb. Laws LB 923. In 1966, the voters approved this amendment, and deleted the restriction from the Constitution. History also shows that at the time of the amendment's adoption, the Legislature had just completed multiple attempts at legislative redistricting following the 1960 decennial census due to the invalidation of the Legislature's plans by a federal court. See Carpenter v. State, 179 Neb. 628 (1966). A reasonable inference is that the removal from the Constitution of the express limitation on redistricting frequency was a response to recent experience and was intended to remove the frequency limitation.
Guidance From Other Jurisdictions
Nebraska is certainly not the first state to be faced with this question. In Harris v. Shanahan, 387 P.2d 771 (Kan. 1963) the court stated, "It is the general rule that once a valid apportionment law is enacted no future act may be passed by the legislature until after the next regular apportionment period prescribed by the Constitution." Id. at 779-780. This statement must certainly be examined. However, "general rules" are of little value or application where a unique provision of a state constitution is at issue. It is unlikely, given its rules of construction, the Nebraska Supreme Court would go beyond the language and history of Nebraska's unique provision. Furthermore, even the "general rule" referenced by the Kansas Supreme Court refers to a limitation created by the "apportionment period prescribed by the Constitution." Id. Thus, the "rule" is predicated on the assumption that the provisions in question have prescribed periods for redistricting. This, in fact, is the norm. Typical redistricting provisions in cases cited in Harris have language stating that redistricting is to be done "the first session after each census" or "the year following the year in which the census is taken." See e.g., Mooney v. Hutchinson, 50 N.E. 599 (Ill. 1898) (finding the Illinois provision requiring "the general assembly shall apportion the state every ten years, beginning winter 1871 . . ." impliedly prohibited apportionment at any other time). Nebraska's provision, by contrast, is less specific, and provides only that redistricting be done "after" each federal decennial census.
It is also relevant that the duty to apportion is a continuous obligation of the Legislature until it is performed. Op. Att'y Gen. No. 92098 ("The duty to apportion the state which is imposed upon the legislature is mandatory, and continues until it is properly discharged.") (citing Selzer v. Synhorst, 253 Iowa 936, 113 N.W.2d 724
(1962) and 81A C.J.S. States § 63). This concept would seem to support the notion that "after" each census could be any time during the ten year period, as opposed to provisions requiring that it be done "in the first session" after the census, etc. See, e.g. State ex rel. v. Zimmerman, 266 Wis. 307, 63 N.W.2d 52 (1954) (Wisconsin provision limiting legislature redistricting to the "first session after each enumeration"). See also Legislature of the State of California v. Deukmejian, 669 P.2d 17 (Cal. 1983) (California provision requiring redistricting "in the year following the year in which the national census is taken — at the beginning of each decade. . . .") (emphasis added) (citing cases from Michigan, North Carolina and New York — each with provisions expressly limiting the frequency of redistricting). Id. at 23. Thus, Deukmajian is distinguishable in that any reapportionment done other than "in the year following . . . the national census . . . at the beginning of each decade . . ." would not follow the language of the California Constitution. In contrast, the Nebraska Constitution mandates redistricting "after each federal decennial census." It does not specify the session or year, or expressly prohibit more than one adjustment of boundaries, provided it is done "after each . . . census."
Conclusion
As discussed above, where a constitutional provision is ambiguous, and therefore subject to construction, the Nebraska Supreme Court will look to the meaning of the words used "in their most natural sense" with the aid of historical context. Spire, 238 Neb. at 775. We believe both the language and the history of article III, § 5 lead to the same conclusion.
In 1874 the Nebraska Constitution limited redistricting to the "first session after" each state or federal enumeration. Neb. Const. art. II, § 3. The 1875 Nebraska Constitution provided that "at its first regular session after each [state] enumeration, and also after each enumeration made by the authority of the United States, but at no other time, the legislature shall apportion the senators and representatives. . . ." Neb. Const. art. III, § 2 (1875) (emphasis added).
The inclusion of express language in the Constitution limiting redistricting to once in ten years continued for many decades. See Rogers v. Morgan, 127 Neb. 456, 459, 462 (1934) (quoting the then existing version of article III, § 5) ("the State may be redistricted from time to time, but not oftener than once in ten years"). See also Buller v. City of Omaha, 164 Neb. 435, 439, 82 N.W.2d 578 (1957) ("The State may be redistricted from time to time, but no oftener than once in ten years.") (quoting Neb. Const. art. III, § 5); Id. at 441 ("the only manner in which such boundaries can be changed is by legislative action and then "no oftener than once in ten years."). The version of Article III, section 5 adopted in 1962 made the frequency of legislative redistricting a matter of legislative discretion as to the minimum time between reapportionment, but again set the maximum frequency at "once in ten years." See Carpenter v. State, 179 Neb. at 630.
Thus, it is clear beyond any dispute the Legislature knew how to draft express language limiting the frequency of legislative redistricting. Instead, the drafters of the current provision chose to delete the express prohibition on redistricting more than once in ten years. The result is a provision mandating redistricting "after each federal decennial census" without further limitation. See Day v. Nelson,240 Neb. 997, 999, 485 N.W.2d 583 (1992) ("Article III, § 5 of the Nebraska Constitution requires the Legislature to redistrict the State after each federal decennial census."); Hlava v. Nelson, 247 Neb. 482,484, 528 N.W.2d 306 (1995) (Article III, § 5 of the Nebraska Constitution . . . requires the Legislature to redistrict the legislative districts of the State after each federal decennial census. . . .").
In light of the plenary authority of the legislature to legislate on matters not prohibited by the Constitution, and in light of the broad constitutional authority vested in the Nebraska Legislature to redistrict, we conclude that your proposed legislation does not offend Article III, § 5 of the Nebraska Constitution insofar as it proposes to redraw legislative districts for the second time "after the federal decennial census." As the Nebraska Supreme Court has held, "The matter of apportionment is so essentially legislative, restrained only by the Constitution, that courts interfere therein only when there appears a clear and palpable violation of the fundamental law." Rogers,127 Neb. at 461.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved by:
_________________________ Attorney General
[1] "Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of adjudication." Blacks Law Dictionary (5th ed. 1979) p. 409. Not only was the court's statement dicta, but it was not even an issue that would be proper for a federal court to address since it was solely a matter of interpreting a provision of state law that had not been construed by a state court. See Robinson v. City of Omaha, 866 F.2d 1042 1043 (8th Cir. 1989) (discussing the duty of federal courts to avoid deciding issues of state law where no state court has interpreted the provision at issue). Furthermore, no federal constitutional issue was intertwined with the question of state law.