F. C. HUBBELL et al., Appellees, v. CLYDE L. HERRING et al., Appellants.

No. 42176.

July 18, 1933.

E. L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and Donald Evans and Wm. F. Riley, for appellants.

Phineas M. Henry, for appellees.

STEVENS, J.—By an act of the 44th General Assembly, now chapter 352-D1 of the Code of 1931, the treasurer of state and each county officer having the custody of public funds, the treasurer of each city, town, and school corporation, and each township clerk and secretary of a school board are directed and required to deposit all of such public funds in such banks as are first approved by the executive council, board of supervisors, city or town council, board of directors or township trustees, as the case may be.

The act further provides for the payment of interest by such depository on all such deposits at the rate of not less than two per centum per annum on ninety per centum of the collected daily balances, payable at the end of each month.

It is further provided by chapter 352-A1 of the Code of 1931 that there be created in the office of the treasurer of state a separate fund to be known as the state sinking fund for public deposits. The purpose, as defined by the Legislature, of this fund, shall be "to

secure the payment of their deposits to state, county, township, municipal, and school corporations having public funds deposited in any bank in this state, when such deposits have been made by authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds." (Section 7420-a2.)

All interest collected under the provisions of chapter 352-D1 is, by the provisions thereof, diverted from the general fund, or township fund, as the case may be, and shall be paid into the state treasury and kept in the aforesaid sinking fund.

The duties of the state treasurer in relation to said fund are fully defined and prescribed by the statute.

By the provisions of chapter 37, Laws of the 45th General Assembly, "all license fees and taxes collected by the treasurer of state * * * shall accrue to the state sinking fund for public deposits as created in chapter three hundred fifty-two-A one (352-A1) of the 1931 Code of Iowa." (Section 36, subd. b.)

Numerous of the approved depository banks have become insolvent and their affairs placed in the hands of receivers, or, for some other reason, the sinking fund is unavailable and cannot be applied to the purposes for which it was created. The amount thus rendered unavailable is approximately $17,000,000.

By chapter 138, Laws of the 45th General Assembly, referred to in the record as Senate File No. 487, the Legislature sought to make suitable provision for securing sufficient cash to replace all necessary sums tied up in the state sinking fund. The provisions of the act material to this case are as follows:

"Section 1. That, for the purpose of securing funds to replace the moneys of the state of Iowa and all taxing subdivisions thereof which are now unavailable because of having been deposited in banks now closed or operating under senate file number 111 or deposits in banks unavailable because of the execution of waiver or other agreements with respect thereto, the executive council is hereby authorized to negotiate with the reconstruction finance corporation or any other governmental agency subsequently provided or authorized, or any other agency, for the purpose of obtaining from it funds for the purpose aforesaid and to perform any and all conditions imposed by the said reconstruction finance corporation or any other governmental agency subsequently provided or authorized, or any other agency, in consideration of the advancement by it of an

amount equal to the amount of public money now on deposit in banks which are either in the process of liquidation or operating under senate file number 111; also such public money deposited in any bank, but unavailable because of the execution of waiver or any agreement with respect thereto, or such lesser amount as in the judgment of the executive council shall be sufficient to relieve the present emergency resulting from the inability to use such funds.

"Sec. 2. To carry out the provisions of any agreement or undertaking entered into between the executive council and the reconstruction finance corporation or other governmental agency, or any other agency, for the restoration or replenishment of the state sinking fund for public deposits, the treasurer of state is authorized to sell, assign, pledge, transfer, and convey any or all of the assets held by him in trust for the said state sinking fund, including claims against defunct banks and trust companies, and anticipated income.

"Sec. 5. The executive council is hereby authorized to annually levy a tax of not to exceed one mill on all taxable property within the state to pay interest on such funds as may be obtained from the reconstruction finance corporation, or such other governmental agency, or any other agency or source, and to provide a fund to retire such installments of the principal sum as may be required by the said finance corporation or agency. In computing the amount of mills to be levied as aforesaid, the executive council shall take into consideration such an amount of the state sinking fund provided by chapter 352-A1 of the code of 1931, as in its judgment may be available for application upon the interest and/or principal required in any year to be paid to the reconstruction finance corporation or governmental agency, or any other agency.".

In pursuance of the authority conferred upon it by the foregoing act, the appellant executive council adopted a resolution providing for, and authorizing, the issuance and sale of bonds to be known as public fund bonds in the aggregate principal sum of $20,000,000 to be dated June 1, 1933, in denominations of $1,000, maturing as provided in the resolution of the executive council, the last on December 1, 1943.

The resolution further provides that each of said bonds shall bear interest at the rate of five per centum per annum, payable semi-annually, to be evidenced by coupons; that "both principal and interest shall be payable from the proceeds of an annual special

tax and out of the fund hereinafter referred to, at the office of the Treasurer of the State of Iowa, or at the option of the holder, at the office of the Commercial National Bank and Trust Company of New York, in the city of New York, New York, in such medium of funds as are at the time of such respective payments legal tender for the payment of debts due to the United States."

A form of bond is included in and made a part of said resolution. Each bond recites "that the state of Iowa, by its executive council, for value received, but subject to provisions hereinafter provided, hereby promises to pay to bearer, * * * " the sum of $1,000 at maturity.

"Both principal and interest of this bond are payable solely from the proceeds of an annual special tax and out of the fund hereinafter referred to, at the office of the Treasurer of the state of Iowa, or at the option of the holder, at the office of the Commercial National Bank and Trust Company of New York, in the City of New York, New York, in such medium of funds as are at the time of such respective payments legal tender for the payment of debts due to the United States.

"This bond is issued in evidence of funds advanced for restoration and replenishment of the State Sinking Fund for public deposits pursuant to the provisions of Senate File Number 487 of the Acts of the 45th General Assembly of Iowa, effective May 5, 1933, and in conformity with a resolution duly adopted by the Executive Council of the State of Iowa. Both principal and interest of this bond are payable solely from the State Sinking Fund created in accordance with the provisions of chapter 352-A1 of the Code of Iowa, 1931, consisting of (1) interest on public funds on deposit in operating banks, (2) liquidating dividends received in the distribution of the assets of the closed banks representing the public deposits therein which have been restored and replenished from the proceeds of this bond and the issue of which it forms a part, and (3) the proceeds of license fees and taxes collected by the State of Iowa on the sale of beer, all of which have been pledged to and will be used for such payment, and from the proceeds of an annual special tax which has been irrevocably levied on all the taxable property within said State for each of the years 1933 and 1934 and thereafter to the extent necessary and as may be permitted by law, all in accordance with the provisions of said Senate File Number 487."

It is further provided in said bond "that this bond does not constitute an indebtedness of the State of Iowa within the meaning of any of the provisions of Article VII of the Constitution of the State of Iowa, and that the total obligation of said State, including this bond, does not exceed any constitutional or statutory provisions or limitations whatsoever."

The resolution of the executive council further recites:

"This Executive Council hereby orders and directs that pursuant to the provisions of said Senate File Number 487, and so long as any of said bonds remain outstanding and unpaid, there shall be and there is hereby levied annually, commencing with the levy for the year 1933, a special tax at the rate of not to exceed one mill on all taxable property within said State to pay interest on such bonds and the principal thereof as the same will respectively become due, provided, however, such tax shall be levied and collected during each such year to the extent and in the manner as may be from time to time permitted and provided by law, and also provided that the amount of such tax to be annually levied as aforesaid shall be only such as may be required to meet any deficiency in the payment of said principal and interest out of available funds from time to time accumulated in the State Sinking Fund as created by Chapter 352-A1 of the Code of Iowa, 1931, as amended and supplemented.

"Section 8. That it is hereby covenanted and agreed that notwithstanding any of the foregoing provisions of this resolution to the contrary, there shall be and there is hereby ordered levied in each of the years 1933 and 1934 the tax at the full rate authorized by said Senate File number 487, and any accumulations from the proceeds of said tax in excess of the current requirements shall be converted into a reserve fund by the Treasurer of State for further assurance of prompt payment of the principal and interest. In like manner all funds becoming available from taxes levied subsequent to the year 1934 as hereinbefore provided and all funds becoming available in the State Sinking Fund in excess of current requirements for the payment of the principal and interest of such bonds in each year, shall be converted into said reserve fund."

The purpose of this action, commenced as already stated, in the name and by and on behalf of two resident citizens and taxpayers of the state of Iowa, is to enjoin the issuance and sale of said

public fund bonds upon the ground, among others, that chapter 138, Laws of the 45th General Assembly, is violative of sections 2 and 5 of article 7 of the Constitution of the state of Iowa, which are as follows:

"Limitation. Sec. 2. The State may contract debts to supply casual deficits or failures in revenues, or to meet expenses not otherwise provided for; but the aggregate amount of such debts, direct and contingent, whether contracted by virtue of one or more acts of the General Assembly, or at different periods of time, shall never exceed the sum of two hundred and fifty thousand dollars; and the money arising from the creation of such debts, shall be applied to the purpose for which it was obtained, or to repay the debts so contracted, and to no other purpose whatever.

"Contracting debt—submission to the people. Sec. 5. Except the debts herein before specified in this article, no debt shall be hereafter contracted by, or on behalf of this State, unless such debt shall be authorized by some law for some single work or object, to be distinctly specified therein; and such law shall impose and provide for the collection of a direct annual tax, sufficient to pay the interest on such debt, as it falls due, and also to pay and discharge the principal of such debt, within twenty years from the time of the contracting thereof; but no such law shall take effect until at a general election it shall have been submitted to the people, and have received a majority of all the votes cast for and against it at such election; and all money raised by authority of such law, shall be applied only to the specific object therein stated, or to the payment of the debt created thereby; and such law shall be published in at least one newspaper in each County, if one is published therein, throughout the State, for three months preceding the election at which it is submitted to the people."

The act in question does not, in terms, authorize the executive council to issue and sell bonds, but, unless it be interpreted as conferring authority upon said council to enter into some form of contract or obligation to pay, the act is meaningless and without effect. We shall treat the obligations described exactly as they are denominated, that is, as bonds. The only obligor on the proposed bonds is the state of Iowa. It alone promises to pay them. The obligation assumed is to pay the aggregate sum of $20,000,000 as principal, together with the interest thereon, according to their terms. That the

obligation assumed is not to pay casual deficits or failure in revenues, or to meet expenses not otherwise provided for would appear to be obvious.

If the proposed bonds create a debt of the state of Iowa, such debt, on the face of it, is greatly in excess of $250,000, and in clear violation of section 2. Furthermore, if it creates a debt in excess of $250,000, it is clearly violative of section 5. No provision is made for the levy and collection of a direct annual tax sufficient to pay the interest as it falls due and also the principal within the period fixed, nor is provision made for submitting the proposal to a vote of the electors as thereby required.

Is it proposed in the present instance to create a debt of the state of Iowa for some purpose not authorized by sections 2 or 5 of article VII of the Constitution, or in excess of $250,000? The answer to this inquiry involves the interpretation of the act in question and the resolution of the executive council. As already appears, the state sinking fund created as stated above, together with all accruals thereto, is pledged to the payment of the bonds, both principal and interest as they mature. For the purpose of this case, we shall assume that the sinking fund augmented by the revenues derived under the provisions of chapter 37, Laws of the 45th General Assembly, are in all respects legally available for the contemplated purpose. The funds on deposit in insolvent banks and banks operating under Senate File 111 (Acts 45th Gen. Assem. c. 156) aggregate approximately $17,000,000. It is estimated that the one mill levied for the years 1933 and 1934 will yield approximately $7,400,000 and that the revenues from license fees and barrel taxes during the year 1933 will be from one-half to three-quarters of a million dollars, and that $1,000,000 will be realized from interest on public deposits during the same period and that other revenues will be available from public funds in liquidating banks. None of the funds thus anticipated and to be raised will be derived from taxes levied upon the property of the state. The proceeds to be realized from the proposed sale of bonds is to be used and distributed to the several sub-divisions entitled thereto, the same as the sinking fund would have been if there had been no defalcation on the part of the approved depositories of public funds.

As commonly and ordinarily understood, a debt includes every obligation by which one person is bound to pay money to another. Buena Vista County v. Marathon Sav. Bank, 198 Iowa 692, 196 N. W.

729, 200 N. W. 199. When used in the constitutional sense, it is given a meaning much less broad and comprehensive than it bears in general use. Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620; Barnes v. Lehi City, 74 Utah 321, 279 P. 878.

The courts of many jurisdictions have sustained the constitutionality of legislative enactments providing for the issuance of bonds to be sold for public purposes, payment thereof to be made solely out of a special fund authorized by the respective acts, the said fund to be raised wholly by other methods and without the imposition of a tax upon property. Kasch v. Miller, 104 Ohio St. 281, 135 N. E. 813; Garrett v. Swanton (Cal. App.) 3 P. (2d) 1025; Garrett v. Swanton, 216 Cal. 220, 13 P. (2d) 725; Lang v. City of Cavalier, 59 N. D. 75, 228 N. W. 819; Briggs v. Greenville County, 137 S. C. 288, 135 S. E. 153; State v. Moorer, 152 S. C. 455, 150 S. E. 269; Williams v. Village of Kenyon (Minn.) 244 N. W. 558, 559.

It is the contention of counsel, as we understand it, that the proposed bonds are to be paid solely out of the sinking fund and from the levy of taxes for the current biennium. It is recited in the bonds that bonds do not constitute an indebtedness of the state of Iowa within the meaning of any of the provisions of Article VII of the Constitution of the state of Iowa, but each instrument must be considered as a whole and given effect according to the intention expressed. The proposed bonds specifically recite as we have already shown, that both principal and interest are payable from an annual special tax and out of the state sinking fund. It must be assumed that the purpose of both the legislature and the executive council has at all times been to use every dollar available in the sinking fund to pay the proposed obligations. There is no way of determining the aggregate amount that will be realized from the sinking fund within the ten-year period. It is obvious that it will not be sufficient for that purpose within the current biennium. The obligation assumed by the state is to pay the aggregate amount of the bonds, together with interest thereon. This obligation must be met by one or both of the methods provided in the bond therefor, that is, either from the sinking fund, the special tax, or both. An annual tax sufficient to meet any deficit arising under the terms of the bonds is to be levied. This may, or may not, in any given year or biennium, exceed $250,000. No rule is provided in advance for determining this fact.

Much reliance is placed by counsel for appellant upon the holding of this court in Rowley v. Clarke, 162 Iowa 732, 144 N. W. 908, 912. That case involved the constitutionality of certain or all of the provisions of chapter 14, Laws of the 35th General Assembly, which provided for the extension and improvement of the state capitol grounds. For the purpose of carrying out the design of the act the executive council was authorized and directed to purchase real estate within certain prescribed limits. The act provided for the levy of a tax of one-half mill on the dollar of the taxable property in the state for the years 1913 and 1914 and an annual tax thereafter for eight years to be fixed by the executive council, sufficient to yield approximately $150,000 annually. The court held that the act came within the provisions of section 2 authorizing the incurring of indebtedness not in excess of $250,000 for the purpose of meeting expenses not otherwise provided for. The act also provided for the issuance of certificates or warrants drawn upon funds created thereby for the payment of the purchase price of real estate, but said warrants and certificates not to be issued in excess of taxes authorized or to be levied to secure the payment of such obligation. The court held that the act did not create a debt of the state because issued in anticipation of taxes to be levied and collected within each biennium period. The court in this connection said:

"II. Certificates or warrants issued in anticipation of revenues collectible within the biennial period and payable therefrom do not create a 'debt' within the meaning of that term as used in the Constitution. The General Assembly convenes on the second Monday of January of the odd-numbered years and provides for revenues necessary to the performance of the different governmental functions during the ensuing two years. Its power of taxation is unlimited, and the taxes authorized to be levied and collected are legally certain to reach the state treasury, and therefore are as certainly available to meet the expenses authorized as are those collectible annually by a municipality.

"It is well settled in this state that a municipality may anticipate the collection of taxes, and in defraying ordinary expenses may make appropriations and incur valid obligations to pay 'in advance of the receipt of its revenues,' even though the treasury be empty, and no actual levy made, and the city be otherwise indebted to the full limit. Grant v. City of Davenport, 36 Iowa 396; Dively v. City of Cedar Falls, 27 Iowa 227; French v. City of Burlington, 42 Iowa 614;

Phillips v. Reed, 107 Iowa 331, 76 N. W. 850, 77 N. W. 1031; City of Cedar Rapids v. Bechtel, 110 Iowa 198, 81 N. W. 468. In some other states the levy of taxes must actually have been made in order to warrant the anticipation of revenues by issuing warrants in advance."

The holding of the court in the Rowley case clearly does not sustain the contention of appellant. The conclusion there reached has abundant support in authority. Herrin v. Erickson, 90 Mont. 259, 2 P.(2d) 296; State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. (2d) 965; Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855; Eastern & Western Lumber Co. v. Patterson, 124 Or. 112, 258 P. 193, 264 P. 441, 60 A. L. R. 528; State v. Candland, 36 Utah 406, 104 P. 285, 24 L. R. A. (N. S.) 1260, 140 Am. St. Rep. 834; State v. Lister. 91 Wash. 9, 156 P. 858; State Capitol Commission v. State Board of Finance, 74 Wash. 15, 132 P. 861; State v. Donald, 160 Wis. 21, 151 N. W. 331; State v. McMillan, 12 N. D. 280, 96 N. W. 310.

The court also in the Rowley case continually emphasized the limitation provided in section 2 of article VII of the Constitution. It is not possible to determine the levy to be made by the executive council, under the authority sought to be conferred in this case, that would be necessary to meet the deficit resulting from the failure of the state sinking fund. The extent of the obligation proposed to be assumed by the state in the present instance is limited by the aggregate amount of the bonds, together with the interest thereon. The limit of indebtedness created by the state at best is the full aggregate amount less the proceeds of the levy for the current biennium and the amount presently and ultimately available in the sinking fund. It is, of course, conceded that any future legislature may repudiate the obligation and repeal the act in question. The character of the obligation assumed must, however, be determined as of the time of its creation. The deficit to be paid out of the proceeds of the state levy to be made annually by the executive council may in each year, or in the aggregate, substantially and possibly many times exceed $250,000. This is the most favorable statement that can be made of the proposition. No one claims that the obligation assumed may be extinguished by the income from all possible sources during the current biennium.

What we conclude is that the act proposes an indebtedness of the state in excess of the authorization expressed in section 2, article

VII, of the Constitution and that in no respect complies with the provision of section 5 of said article, including the submission of the proposal to a vote of the electors. Furthermore, as previously indicated, the indebtedness sought to be created is not for the purpose of meeting casual deficits or failure in revenue or to meet expenses not otherwise provided for.

We have deemed it best, upon the record before us, not to pass upon the remaining propositions urged by appellee. On these questions, which it is unnecessary now to decide, we express no opinion. We deem it advisable, however, to say that the contention of appellee that the act violates article III of the Constitution in that it delegates the taxing power of the general assembly to the executive council presents an interesting and doubtful question.

It is true, as contended by counsel for appellant, that courts will not declare a statute invalid if it can by any possibility be sustained.

The court has given due regard to this well established and much to be commended principle. What we conclude is that the act in question is invalid because it authorizes the creation of a debt in excess of the constitutional limitation without provision for the submission of the proposal to a vote of the electors, as required by section 5, article VII, of the Constitution.

It follows that the judgment and decree of the court must be and it is affirmed.—Affirmed.

All Justices concur, except EVANS, J., who takes no part.