CHARLES L. SELZER, appellant, v. MELVIN H. SYNHORST, Secretary of State, et al., appellees; ROBERT F. BARCLAY, intervenor.

No. 50579.

MARCH 6, 1962.

REHEARING DENIED MAY 8, 1962.

William L. Meardon and Ansel Chapman, both of Iowa City, for appellant.

Evan Hultman, Attorney General, Wilbur N. Bump, Solicitor General, of Des Moines, and Louis W. Schultz, County Attorney, Iowa County, of Marengo, for appellees.

D. C. Nolan, of Iowa City, for intervenor.

SNELL, J.—This action for declaratory judgment challenges the constitutionality of Senate File 504, now chapter 69, Acts of the Fifty-ninth General Assembly, relating to the reapportionment of state senatorial districts.

█ It should, of course, be kept in mind it is not our function to determine the wisdom of a legislative Act. Unless it contravenes the Constitution, it is valid.

Article III, section 1, Iowa Constitution, provides: "The

powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

Article III, section 1, Legislative Department, provides: "The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives: * * *."

Section 5 provides: "Senators shall be chosen for the term of four years, at the same time and place as Representatives; * * *."

Section 6 provides: "The number of Senators shall not be less than one third, nor more than one half the representative body; and shall be so classified by lot, that one class, being as nearly one half as possible, shall be elected every two years. When the number of Senators is increased, they shall be annexed by lot to one or the other of the two classes, so as to keep them as nearly equal in numbers as practicable."

Section 7 provides: "Each house shall choose its own officers, and judge of the qualification, election, and return of its own members. * * *."

Section 34, as amended, provides: "The Senate shall be composed of fifty members to be elected from the several senatorial districts, established by law and at the next session of the general assembly held following the taking of the state and national census, they shall be apportioned among the several counties or districts of the state, according to population as shown by the last preceding census." By further amendment it is provided that "no county shall be entitled to more than one (1) senator."

The official 1960 census indicated a population growth and major population changes from that of 1950 within individual counties in the state. This fact prompted action by the General Assembly in 1961 pursuant to section 34, Article III.

Although the Constitution provides for classification so as nearly as possible one half the Senators shall be elected every two years, in some manner in past years the two groups became

uneven in number so 29 Senators were elected at one general election and 21 at the next election, two years later.

Chapter 41, Code, 1958, provides for 50 senatorial districts with each district having one Senator. The apportionment provides for 15 one-county districts, 21 two-county districts and 14 three-county districts. Chapter 69, Acts of the Fifty-ninth General Assembly, provides for 50 senatorial districts, each having one Senator, with 17 one-county districts, 17 two-county districts and 16 three-county districts. Except for designation by district number, there is no change in eleven of the one-county districts, two of the two-county districts and one of the three-county districts. In the remaining 81 counties, district boundaries are changed.

The Act provides for the nomination and election of Senators from 21 of the new districts in 1962 and election in 26 districts in 1964 for full four-year terms and in three districts, the nineteenth, twenty-sixth and forty-third, for two-year terms in 1964.

This corrects as nearly as possible the present imbalance between holdover and newly elected or re-elected Senators, and after 1964 approximately half the terms expire each two years.

The Act does not affect the terms of Senators now holding certificates of election.

For the legislative session in 1963 and any special session thereafter prior to 1965, seven counties are attached for the purpose of representation in the Senate to former districts so they are contiguous to the districts to which they are attached. It appears that in these seven counties the voters are arbitrarily assigned for representation to Senators for whom they have had no opportunity to vote.

Chapter 69, Acts of the Fifty-ninth General Assembly, now under attack, passed the Senate April 27 and the House of Representatives May 3, was duly signed by their presiding officers and by the Governor on May 5, all in 1961.

In the reapportionment 15 counties having a population in excess of 40,000 are made one-county districts. Because of geographical location, two additional one-county districts are created, although the population of each is somewhat under the remaining average of 41,000. The other counties are assigned

to districts so as to have as nearly as possible an average population.

The same session of the legislature passed what is known as the "Shaff Resolution", initiating a proposed constitutional amendment for the reapportionment of the legislature.

In its decision the trial court stated that Senator D. C. Nolan, a resident lawyer of Iowa City and a member of the Senate from the twenty-fifth senatorial district in 1960, was called as a witness on behalf of plaintiff. Senator Nolan identified exhibits and submitted a plan for the purpose of showing reapportionment of the Senate could be constitutionally made without providing any two-year terms and without attaching counties to other senatorial districts for one session of the legislature.

Neither this testimony nor the exhibits are in the record here. We mention it because of the trial court's comments. It is not for us to pass upon the respective merits of alternative legislative proposals. Attached to intervenor's brief, prepared by Senator Nolan, is an appendix we assume to be the plan referred to.

It is unimportant but interesting to note that under this proposal no attempt is made to equalize the number of terms expiring each two years. Also there is a substantial difference in the population of multiple county districts, with a low of 21,000 in a proposed district consisting of Fremont and Page Counties and a high of 70,000 in a proposed district consisting of Iowa and Johnson Counties.

While the various proposals were being considered by the legislature, the attorney general, when asked for an opinion, advised the chairman of the Legislative Redistricting Committee that "mere re-enactment of existing senatorial districts or minor adjustments which did not correct any existing inequalities of apportionment would not constitute compliance with the Constitution."

The proposal submitted in argument by counsel for intervenor did not meet with legislative approval.

The trial court found that it was conceded by all parties that the reason for the "two-year-term" provision of the Act

was to make more nearly equal the number of Senators to be elected at each general election.

The trial court entered a finding and judgment sustaining the constitutionality of Senate File 504, now chapter 69, except the portion which provides two-year terms for Senators to be next elected in districts nineteen, twenty-six and forty-three. The court held said section severable from the rest of the Act, and it does not invalidate the entire law. Under the trial court's decree all Senators to be elected in succeeding general elections hold office for a term of four years, including those Senators to be elected in 1964 from districts nineteen, twenty-six and forty-three, who, under the provisions of the Act, would otherwise have been elected for two-year terms.

On appeal plaintiff argues the Act is unconstitutional because it provides:

1. For two-year terms in three districts and such part of the Act (held invalid by the trial court but severable from the remainder of the Act) is not so severable.

2. For some counties to be represented in the Sixtieth General Assembly and in any special session before the Sixty-first General Assembly, by more than one Senator.

3. For the representation in the Sixtieth General Assembly and any special session before the Sixty-first General Assembly, of certain counties by Senators not voted for by the residents thereof.

4. For the attaching of counties to existing districts which are not contiguous thereto.

5. For a second reapportionment of the state Senate by the Fifty-ninth General Assembly.

The intervenor, a resident of one of the counties claimed to have been disenfranchised, supports the position of plaintiff with an additional brief and argument.

Defendants, by cross-appeal, contend the part of the Act found invalid by the trial court is constitutional. Of course they defend the decree in other respects.

I. We first consider the part of the law held invalid by the trial court, i.e., the provision for the election in three districts of Senators for two-year terms in 1964. This issue appears to be a matter of first impression in our court.

Article III, section 5, of the Constitution, previously quoted, provides Senators shall be chosen for a term of four years. This is a clear mandate and it is conceded the legislature cannot arbitrarily establish regular two-year senatorial terms. This constitutional provision, however, is not the only one to be considered.

Article III, section 6, provides for the election as nearly as possible of one half the Senators each two years and keeping each class nearly equal. Section 34 provides for apportionment according to population, except that no county shall be entitled to more than one Senator. We find nothing in the Constitution giving one section greater weight than another.

The most comprehensive discussion of the problem coming to our attention is found in Volume 39, Number 4, Iowa Law Review, in two articles, "The Iowa Senatorial Districts Can be Reapportioned—A Possible Plan", by George B. Mather and Robert F. Ray of the Institute of Public Affairs, State University of Iowa, and "Constitutional and Legal Aspects of the Plan", by Robert L. Stoyles and Professor Frank R. Kennedy. We will condense and quote from these two articles.

The constitutional requirements for reapportionment are discussed. Because of the provision that no county shall have more than one Senator, it is impossible to apportion the seats in the Senate into units of equal population. A single county district may have a population greater than the average in multiple county districts.

"* * * Any attempt, however, to apportion the seats should recognize, to the greatest extent possible, the fundamental principle of equality of representation. * * *".

While the details of chapter 69, Fifty-ninth General Assembly, differ from those of the plan discussed in the Law Review articles, the basic approach to the problem is the same in that the larger counties are formed into one-county districts and the other counties into multiple county districts with approximately equal population. In order to bring the number of Senators elected at each election into approximate balance, it was suggested that in a few districts Senators be elected initially for two-year terms. In a few cases it was also necessary to assign counties to a holdover Senator for a temporary period. It

was recognized that by this procedure for a two-year period citizens of a county would be represented by a Senator in whose election they did not participate, and also that the voters of those counties would not participate in electing a Senator for six years.

The constitutional aspects of the proposal are discussed in the second article. We quote:

"Perhaps the most serious challenge that can be made to the proposed plan involves the requirement in Section 5 of Article III of the Iowa Constitution that 'Senators shall be chosen for the term of four years . . .' The proposed reapportionment plan contemplates a transitional election at which senators for four districts shall be elected for a two-year term. Some such procedure must be followed if the constitutional objective of continuity of the senate is to be fully realized. The principle of continuity of the senate was intended to be secured by two provisions in Section 6 of Article III of the Iowa Constitution: (1) In the beginning a classification of senators was to be made by lot so that 'as nearly one-half as possible, shall be elected every two years.' (2) When the number of senators should thereafter be increased, the new senators were to be annexed by lot to one of the two classes, 'so as to keep them as nearly equal in numbers as practicable.' It is manifest that the constitutional architects intended that the provision assuring a retention of one-half the members of the senatorial body from one general assembly to the next should be a permanent feature. Moreover, the provision for holdover of half the senate remains intact as a matter of both the letter and the principle of the Constitution. Nevertheless, the vicissitudes of the years have resulted in a departure from the constitutional scheme: In one biennial election year 29 senatorial seats must be filled, and in the next, 21. If the constitutional plan is to be carried out, four of the 29 senators must be transferred to the other class. It does not appear that this change can be accomplished otherwise than by modifying terms of four senators. While constitutional objections may be made to the taking of this step, none seems to be insuperable.

"* * *

"Conflict between the four-year term provision in Section

5 of Article III and the provision in Section 6 for election of half the senators every two years arises only because of the legislative departure from the requirement in Section 6 that the two classes be as nearly equal as practicable. The four-year term for members of the Senate, however, is an integral part of the constitutional design whereby continuity of the senatorial body is assured. If restoration of the balance between the two classes provided for in Section 6 can be achieved by the reduction, for a single transitional election, of four senatorial terms to two years, no individual rights requiring constitutional protection are disturbed. It would be an argument too stultifying to be admitted to say that when an unconstitutional condition has come about, there is no legislative power to rectify the unconstitutional divergence unless the Constitution itself explicitly authorizes corrective action and elaborates the procedure to be followed. Nor can it be legitimately argued that a constitutional amendment is necessary to enable the legislature to conform to the pre-existing constitutional mandate."

After discussing authorities from other jurisdictions, the article says:

"* * * The proposal being made herein contemplates nothing so drastic as that of reducing the term of any incumbent senator. If two courts of last resort, presented with constitutional provisions having the same objectives as those found in Article III of the Iowa Constitution, can go so far as to shorten four-year terms of duly elected senators in order to permit the effectuation of such provisions, there should be no difficulty with the proposal here involved contemplating no retroactive reduction of senatorial terms and requiring no judicial aid to establish the length of the four shortened terms.

"* * *

"In· the suggested reapportionment plan, five counties [seven in the case at bar] will be 'assigned' for a transitional two-year period to districts having senators in whose election the voters of the assigned counties did not participate. Seven counties on the other hand will be assigned to districts under circumstances giving the voters of each of these counties an opportunity to participate in the election of two senators sitting in the same general assembly. These assignments do not appear to

be vulnerable to attack unless shown to be arbitrary, i.e., not reasonably necessary or related to the attainment of the constitutional objective of a fair reapportionment. It must be assumed that such assignments were foreseen by the draftsmen of the provision for apportionment in Iowa Constitutional Amendment No. 2 of 1904. The essence of reapportionment is the assignment of a county to a new district. In the light of the restrictions on reapportionment explicitly set forth in the Constitution, it is unthinkable that the draftsmen—who must be presumed to have been practical men as well as men acting in good faith—intended to imply still another restriction, viz., that counties should be reassigned only to districts of the same class—i.e., districts electing senators at the same time. While representation of a constituency different from that which elected the senator or representative is exceptional, it is sometimes unavoidable if both continuity of the legislative body and responsiveness to population growth and change are to be achieved."

The Act is "entitled to the benefit of the presumption of constitutionality usually accorded state legislation. Indeed, there is ample justification for arguing that in this area the legislative judgment is entitled to more than ordinary respect by the courts. In any event judicial review of a legislature reapportionment should not merely juxtapose the plan adopted against abstract standards of perfection nor, if the court is realistic, even against conceivable alternatives which may be conjured in courtroom argument; the judicial question is, or should be, whether the approach to the constitutional standards achieved by the reapportionment law shall be sustained as against the allocation that would result from an adverse ruling—i.e., one conforming to the last valid apportionment. Since invalidation of apportionments does not necessarily stimulate legislatures to more conscientious performance of their constitutional obligations, the courts have properly been influenced to sustain such measures notwithstanding the conceded force of criticisms voiced in the arguments. It is, of course, not within judicial competence to compel legislative bodies to act affirmatively to reapportion.

"The ability of a constitution to endure depends upon its ability to meet the needs of an inevitably and inexorably chang-

ing society. No provision in the Iowa Constitution contributes more directly to its durability than that requiring periodic reapportionment to reflect population shifts. * * *."

The Act under attack does not shorten the term of any incumbent Senator. No candidate for office has in advance of his election any basic right to be elected for a specified term of years. Elections for short terms to fill vacancies are common in our law. See section 69.12, Code, 1958. The voters in the nineteenth, twenty-sixth and forty-third districts in 1964 will be in the same position as if a vacancy through resignation or death existed. They will elect for a short term. No basic or fundamental rights are denied.

Courts are reluctant to declare legislative enactments unconstitutional, and will do so only when the violation is clear, palpable and practically free from doubt. State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N.W. 390, 88 A. L. R. 218; Cook v. Hannah, 230 Iowa 249, 297 N.W. 262; Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236.

The claimed unconstitutionality of chapter 69, Fifty-ninth General Assembly, in providing for the election of three Senators for two-year terms is not clear, palpable and practically free from doubt. Of course this leaves the question of severability of this provision moot.

II. Plaintiff challenges the constitutionality of the Act in that some counties will be represented in the Sixtieth General Assembly and in any special session before the Sixty-first General Assembly by more than one Senator.

Because of the change in district boundaries and designation, the voters in seven counties who helped elect Senators in 1960 for four-year terms will, in 1962, be helping elect Senators in their new district for four-year terms. Following the 1962 election a voter in one of these counties could say (if he had voted for successful candidates) that he had voted for and was accordingly represented by two Senators. It is not unusual for a voter to have such an opportunity. It frequently happens when a voter moves from one district to another between elections. The idea that we are personally represented and represented only by officials for whom we have voted stretches too far the theory of representative government. In some states our

incumbent President did not receive a majority vote. In Washington, D. C., the residents did not vote at all. The President, however, is still the President of all the people.

The constitutional amendment of 1928 added to section 34 of Article III the words "but no county shall be entitled to more than one (1) senator."

Here again we find little helpful authority in Iowa. The Iowa Law Review, previously quoted, recognizes the problem and says a provision such as we have is not vulnerable to attack.

The Constitution requires that the Senate be apportioned.

Apportion, according to Webster's Third International Dictionary, means to divide and assign in proportion; divide and distribute proportionately. After each census there must be a new apportionment. With a shift in population, and membership in the Senate limited to 50, it is inconceivable that proper reapportionment could be achieved without change in district boundaries and resulting change in representation.

While the limitations contained in the Constitution must be observed, the Constitution should not be so construed as to defeat its own purpose. Without adjustments in representation, effective reapportionment may not be attained.

The provision "no county shall be entitled to more than one (1) senator" says nothing about whom the Senator represents. The common sense meaning of the provision is that not more than one Senator shall be elected from the same county at the same time. A single county district can elect only one Senator regardless of the county's population. The limitation is on the election and qualification and not on representation. A Senator represents either the people of the state as a whole, as suggested by the trial court, or the people within the district existing during his tenure of office. He is not a mere mouthpiece for those who voted for him. He is a legislative representative of the people exercising his authority for the welfare and protection of all. We cannot think any member of the Senate would be so narrow as to confine his representation solely to those who voted for him or those counties assigned to him.

In the broad sense, a Senator represents all the people. In the narrow sense, he represents the people within the territorial limits of his district as it exists at a particular time. In neither

event is there such dual representation as to be prejudicial or preferential.

III. The Act under attack provides that for the legislative sessions in 1963 and at any special session prior to 1965, seven counties are attached for the purpose of representation to designated districts.

 This provision is attacked as violative of the Fourteenth Amendment to the Constitution of the United States and section 1 of Article II of the Constitution of Iowa.

The Fourteenth Amendment to the Constitution of the United States provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * *."

Section 1, Article II, of the Iowa Constitution provides: "Every male citizen of the United States, of the age of twenty one years, who shall have been a resident of this State six months next preceding the election, and of the County in which he claims his vote sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorised by law."

The limitation of suffrage to "male" citizens is now inoperative under the Nineteenth Amendment to the Constitution of the United States.

The issues in this case do not fall within this provision of the United States Constitution. Here there is no question of national citizenship nor of a right to vote.

Nixon v. Herndon, 273 U. S. 536, 47. S. Ct. 446, 71 L. Ed. 759; Nixon v. Condon, 286 U. S. 73, 52 S. Ct. 484, 76 L. Ed. 984, 88 A. L. R. 458; and Smith v. Allwright, 321 U. S. 649, 64 S. Ct. 757, 88 L. Ed. 987, 151 A. L. R. 1110, cited by plaintiff, involved the right of resident citizens in Texas to vote in regularly scheduled primary elections. There is no such disqualification in the Iowa law under consideration. Colegrove v. Green, 328 U. S. 549, 66 S. Ct. 1198, 90 L. Ed. 1432, involved an Illinois congressional redistricting act and was dismissed because the issue was of a peculiarly political nature.

More nearly in point is Snowden v. Hughes, 321 U. S. 1, 6, 64 S. Ct. 397, 400, 88 L. Ed. 497, 502, where the Supreme Court said:

950

■ "The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law. [citations] The right to become a candidate for state office, like the right to vote for the election of state officers [citations], is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause."

There is no violation of section 1, Article II, of the Iowa Constitution.

The voters in the attached counties have the right to vote in "all elections which are now or hereafter may be authorised by law."

■ For the purpose of interim "representation" the counties are attached to districts. This attachment will continue only until there is a senatorial election in the new district of which they are a part. As soon as there is a Senator to be elected from their district, they can vote. Until there is an election or some one or some thing to vote for, the question of the right to vote is academic but not real. There is no denial of a right to vote until there is an election. There is no disenfranchisement as to a particular office when there is no vacancy to be filled. The Constitution does not say a voter is entitled to vote for every office in our national or state government at every election. It does say he is entitled to vote at all elections authorized by law. That simply means he is entitled to vote on candidates and propositions submitted to the voters in his voting precinct.

IV. Article III, section 37, of the Constitution of Iowa provides: "When a congressional, senatorial, or representative district shall be composed of two or more counties, it shall not be entirely separated by any county belonging to another district; and no county shall be divided in forming a congressional, senatorial, or representative district."

What the Constitution plainly provides is that counties in a district shall be contiguous.

Plaintiff and intervenor contend that the seven counties

attached to districts for the purpose of interim representation are not attached so as to be contiguous. This argument proceeds from the premise that the district numbers to which the counties are attached refer to the number designation of newly created districts.

 The Act itself does not support the premise upon which this argument is based.

If the reference in the attaching paragraph is to designations appearing in chapter 41, Code, 1958 (the old Act), the counties are attached so as to be contiguous.

It is argued that the reference is to the newly numbered districts. If this were so, the counties would not be contiguous.

Chapter 69, Acts of the Fifty-ninth General Assembly, repeals chapter 41, Code of 1958. No saving provisions appear in the Act.

It is argued that when chapter 69, Acts of the Fifty-ninth General Assembly, was enacted and approved, it became effective, and coincident therewith, chapter 41 of the Code lost its effect and vitality by repeal.

This would be true except for the wording of the Act.

Section 2 provides that the Act shall be effective as to the nomination and election of Senators from 21 districts in 1962. In all other districts it is effective in 1964. It is then provided the seven counties are attached "to the present districts designated opposite the name of the county." At the time of the passage of the Act, the only "present districts" were the districts identified in chapter 41 of the Code. The use of the term "present districts" in an Act passed in 1961 refers to the districts existing at that time and not to districts to come into official legislative life in 1962 and 1964.

 V. The Act is attacked as a second reapportionment of the Senate within a ten-year period.

 Article III, section 34, quoted above, provides for apportionment of the Senate at the next session after the state and national census. The census is taken at ten-year intervals. Apportionment is to be based on the census. Between the dates of the census there would be nothing upon which to base an apportionment. It logically follows there can be only one apportionment within a ten-year period. This assumes, of course, the

first apportionment is valid. A failure to act does not bar subsequent legislatures from acting. The power is a continuing one until the duty is performed. 18 Am. Jur., Elections, section 14.

In addition to chapter 69 (the Act under attack) the Fifty-ninth General Assembly passed Senate Joint Resolution No. 16, now chapter 344, Acts of the Fifty-ninth General Assembly. This is a joint resolution proposing a constitutional amendment providing for the composition of the General Assembly. This proposal would change some of the provisions of Article III of the Constitution involved in this appeal.

A constitutional amendment so initiated by the legislature must be passed in the same form by two successive sessions of the legislature and then approved by a vote of the people. The process is time consuming. The passage of the joint resolution is not in itself a reapportionment of the legislature. It is the first step in a three-step process. It is the initiation of a proposed amendment to set up machinery for future reapportionment. That the people through constitutional amendment may in the future change our basic law on apportionment does not make the present senatorial reapportionment Act a second in a ten-year period.

Our present Constitution imposed a duty of reapportioning the Senate on the Fifty-ninth General Assembly. Pursuant to that mandate the legislature acted. The fact that at the same session the legislature proposed a constitutional change did not relieve the legislature of its duty nor make the performance thereof unconstitutional.

The problems facing a legislature attempting to reapportion itself are numerous and difficult. Varying philosophies of government and representation, as well as economic and political pressures, must be resolved. The issues in the case at bar are also difficult. Able and resourceful counsel have presented forceful and logical arguments. Our course, however, is clear. As we say in Division I, it is our duty to uphold the action of the legislature unless violation of the Constitution is clear, palpable and practically free from doubt.

Violation of the Constitution has not been so established.

Chapter 69, Acts of the Fifty-ninth General Assembly is valid.—Affirmed on plaintiff's appeal and reversed on defendant-cross-appellants' appeal.

All JUSTICES concur except BLISS, J., not sitting.